The **AMBASSADOR DIVISION OF** the **FLORSHEIM SHOE COMPANY, A DIVISION OF INTERCO INCORPORATED, Plaintiff,**

v.

**UNITED STATES, et al., Defendant,**

and

**Footwear Industries of America, Inc., Intervenor.**

Court No. 82-2-00233.

United States Court of International Trade.

Dec. 1, 1983.

Sonnenberg & Anderson, Chicago, Ill. (Steven P. Sonnenberg, Chicago, Ill., on the brief and Paul S. Anderson, Chicago, Ill., of counsel), for plaintiff.

J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., Washington, D.C. (A. David Lafer and Francis J. Sailer, Washington, D.C., on the brief), for defendant.

Collier, Shannon, Rill & Scott, Washington, D.C. (Lauren R. Howard and Michael R. Kershow, Washington, D.C., on the brief), for intervenor.

Plaia & Schaumberg, Washington, D.C. (Herbert C. Shelley and Tom M. Schaumberg, Washington, D.C., on the brief), for The Special Commodity Group on Nonrubber Footwear from Brazil, of the American Ass'n of Exporters and Importers, amicus curiae.

Daniels, Houlihan & Palmeter, Washington, D.C. (Donald B. Cameron, Jr., Washington, D.C., on the brief), for Volume Footwear Retailers of America, amicus curiae.

FORD, Judge:

This civil action instituted by plaintiff, an importer of leather footwear from India, contests the final results of the first periodic review conducted pursuant to 19 U.S.C. § 1675(a) by the United States Department of Commerce, International Trade Administration (ITA), with respect to a countervailing duty order covering such merchandise. Said order was published in the Federal Register on February 17, 1982 (47 Fed.Reg. 6906 et seq.)[1] and covers importations of the subject leather footwear between January 1, 1980 and December 31, 1980.

The action is before the court on a motion pursuant to Rules 56 and 56.1 of the Rules of this Court for a "Review of Administrative Determinations upon An Agency Record" and for summary judgment. Plaintiff's primary contention is that the ITA acted contrary to law and in conflict with United States international treaty obligations by ordering suspension of liquidations and retroactive assessment of countervailing duties. Defendant and intervenor have cross-moved for summary judgment.

On March 14 and April 15, 1983 the motions to appear as amici curiae of Volume Footwear Retailers of America, Inc. and The Special Commodity Group on Nonrubber Footwear from Brazil of the American Association of Exporters and Importers were granted.

The facts material to this motion as reflected in the administrative record indicate that on October 26, 1979 the Secretary of the Treasury issued a final countervailing duty determination (T.D. 79–275) pursuant to 19 U.S.C. § 1303 (1976). The determination was published in the Federal Register (44 Fed.Reg. 61588) and set forth net subsidies of 4.24 percent ad valorem for leather footwear and 1.01 percent ad valorem for leather uppers (lasted and unlasted) from India. Since the unlasted leather uppers were subject to duty free entry, the notice directed that liquidation of future entries of said merchandise be suspended pending the results of an investigation by the United States International Trade Commission (ITC). Liquidations were also ordered suspended for all entries covered by T.D. 79–275 by order of the United States Customs Service on November 9, 1979.

The ITC on March 26, 1980 published its determination in the Federal Register (45 Fed.Reg. 19678) that imports of unlasted leather uppers from India were not materially injuring or threatening a domestic industry and thereby effectively terminated

---

**1.** The original countervailing duty order was published in the Federal Register on October 26, 1979 (44 Fed.Reg. 61588.)

the proceeding with respect to said merchandise. On May 12, 1980 the ITA (to which the authority to administer antidumping and countervailing duty laws had been transferred on January 2, 1980) published notice of intent to conduct administrative reviews pursuant to 19 U.S.C. § 1675(a) of all outstanding countervailing duty orders including T.D. 79–275. Thereafter, on August 22, 1980, a Customs telex issued at the direction of the ITA ordered customs officers to continue to suspend liquidation of entries subject to T.D. 79–275 until further notice.

The preliminary results of its review of T.D. 79–275, covering the period from January 1, 1980 through December 31, 1980, was published in the Federal Register (46 Fed.Reg. 40781) on August 12, 1981. Three programs were reviewed by the ITA, including short-term preferential financing, special tax deductions for export expenses, and the cash compensatory support program.

Since India refused to present evidence to the contrary, the ITA determined, that based upon the best information available, the ad valorem rates of net subsidies to be 15.08 percent for leather footwear and 12.-58 percent for lasted leather uppers.

The notice stated that estimated duties shall continue to be required in accordance with rates set forth in the Department of Treasury's outstanding countervailing duty order, i.e. 4.24 percent for leather footwear and 1.01 percent for lasted leather uppers. Interested parties as defined in 19 U.S.C. § 1677(9) submitted written comments on these preliminary results and a hearing was held on October 19, 1981.

A final determination, confirming the preliminary results, was made on February 17, 1982 and published in the Federal Register (47 Fed.Reg. 6906). Said notice directed customs officers to assess countervailing duties at 15.08 percent and 12.58 percent on shipments of Indian leather footwear and lasted leather uppers, respectively, entered between January 1, 1980 and December 31, 1980. The notice further directed that estimated countervailing

duties in these amounts be posted for all entries made after February 17, 1982, and that suspension of liquidations previously ordered remain in effect for all shipments exported on or after January 1, 1981 until completion of the next periodic review pursuant to 19 U.S.C. § 1675(a).

Plaintiff contends the suspension of liquidations and the retroactive assessment of countervailing duty, as ascertained by the periodic review, are contrary to law. Defendant urges assessment of the redetermined countervailing duties is required by law.

Since the original countervailing duty order covering the merchandise at bar was promulgated prior to the enactment of the Trade Agreements Act of 1979, it is noted that 19 U.S.C. § 1303 (1976) constituted the entire countervailing duty law at that time. Under the law as it then existed a determination of injury by the ITC was required only when the subsidized merchandise was entitled to duty free entry.

The Trade Agreements Act of 1979, effective January 1, 1980, enacted a new countervailing duty law, Title VII of the Tariff Act of 1930, as amended, which was subsequently reported as Subtitle IV, Chapter 4, Title 19, United States Code. One of the major purposes of the Act was to approve the multilateral trade agreements concluded in 1979 and to implement substantive provisions of United States law. Among the agreements reached during the multilateral trade negotiations was the agreement on Interpretation and Application of Articles VI, XVI, XXII of the General Agreement on Tariffs and Trade ("Subsidies Code"). Signatories to the Subsidies Code agreed to impose countervailing duties on all subsidized merchandise after a determination that said merchandise had caused or threatened to cause material injury to a domestic industry. *See* S.Rep. No. 249, 37–38, U.S.Code Cong. & Admin.News 1979, p. 381. The United States accepted the Subsidies Code with the qualification that the "injury test" would be applicable only to those countries who were signatories to the code. *See*

S.Rep. No. 249, 13. Accordingly, the injury test was applied only to new investigations when the merchandise was imported from a country under the agreement. For countries not under the agreement the law would continue to authorize the imposition of countervailing duties without an injury test. *Id.* 43–44.

In order to implement this system Congress amended 19 U.S.C. § 1303 by repealing its former subsections (a), (3) through (6), (b) and (c) and by adding a new section (b), which provides in pertinent part as follows:

(b) The duty imposed under subsection (a) of this section shall be imposed under regulations prescribed by the administering authority * * *, in accordance with subtitle IV of this chapter (relating to the imposition of countervailing duties) except that, in the case of any imported article or merchandise which is not free of duty—

(1) no determination by the United States International Trade Commission * * * shall be required.

* * * * * *

(4) Any reference to determinations by the Commission * * * shall be disregarded.

In addition the Trade Agreements Act of 1979 under Section 104(c) provided that existing countervailing duty orders shall remain in effect and be subject to reviews under 19 U.S.C. § 1675(a). This was the second major qualification to the acceptance of the Subsidies Code by the United States. By virtue of this qualification an injury test was not required to maintain countervailing duty orders issued prior to the 1979 Act. However, the countervailing duty order was subject to a periodic review.

As in the case at bar, the merchandise involved in *Industrial Fasteners Group, American Importers Association v. United States,* 710 F.2d 1576 (Fed.Cir.1983) came from India. In that case the appellate court held India not to be "a country under the agreement" and the old law contained in 19 U.S.C. § 1303 governed. Section 1671(c) of the 1979 Act indicates that in the case of merchandise which is a product of a country which is not a signatory to the agreement, Section 1303 controls. Section 1303(b) provides as follows:

(b) The duty imposed under subsection (a) of this section shall be imposed, *under regulations prescribed by the administering authority (as defined in section 1677(1) of this title), in accordance with subtitle IV of this chapter (relating to the imposition of countervailing duties)* except that, in the case of any imported article or merchandise which is not free of duty—

(1) no determination by the United States International Trade Commission under section 1671b(a), 1671c, or 1671d(b) of this title shall be required,

(2) an investigation may not be suspended under section 1671c(c) of this title,

(3) no determination as to the presence of critical circumstances shall be made under section 1671b(e) or 1671d(a)(2) or (b)(4)(A) of this title, and

(4) any reference to determinations by the Commission, or to the suspension of an investigation under section 1671c(c) of this title which are not permitted or required by this subsection shall be disregarded. [Italics added.]

As indicated *supra* it is plaintiff's and amici curiae's position that both the suspension of liquidation and the retroactive assessment of countervailing duties by Customs are contrary to law. It is noted that Section 1303(b) requires duty be imposed under regulations prescribed by the administering authority. Examination of the regulations issued by Commerce under the authority of Section 1303(b) indicates there are no regulations relating to suspension of liquidation. There is however a regulation (19 CFR 355.41 (1980)) relating to periodic review. Additionally, Section 335.37, entitled "Differences in determined and estimated countervailing duties", appears to be the only remaining regulation, issued by the Department of Commerce,

covering countervailing duties. It reads as follows:

If the amount of the estimated countervailing duty deposited pursuant to a Preliminary Affirmative Determination is different from the amount of the countervailing duty to be assessed pursuant to a Countervailing Duty Order, the difference with respect to merchandise entered, or withdrawn from warehouse, for consumption before publication of notice of the Commission's affirmative final determination or, in those investigations involving dutiable merchandise from non-agreement countries, the Secretary's final determination shall be:

(a) Disregarded, to the extent that the estimated duty is less than the duty determined to be assessable under the Order; or

(b) Refunded, to the extent that estimated duties collected were more than the duty determined to be assessable under the Order.

The Court finds the above regulation, while relating to countervailing duties does not cover the procedure as to such duty determined to be due as a result of a periodic review as set forth in 19 U.S.C. § 1675(a).

A further review of 19 CFR establishes that customs regulations contained in Subpart E, Sections 159.51 to 159.58 cover suspension of liquidation. The only provision covering the suspension of liquidation in countervailing duty matters is Section 159.-58(b). All other suspension provisions are in matters covering "Notice of Preliminary Affirmative Countervailing Duty Determination", "Notice of Final Affirmative Countervailing Duty Determination", or "Notice of Violation of Agreement", as provided by Part 355, Chapter 3 of this title. Nowhere in 159.58(b) is there a provision for suspension of liquidation as a result of a periodic review.

Both parties have additionally urged the utilization of 19 U.S.C. § 1671f, "Treatment of difference between deposit of estimated countervailing duty and final assessed duty under countervailing duty orders", to sustain their positions as to the collection or noncollection of any increased countervailing duties. Plaintiff contends 1671f(a) is controlling while defendant and intervenor claim 1671f(b) is applicable. A reading of both sections establishes neither section may be utilized since both require specific conditions. Section 103 of the Trade Agreements Act of 1979 provides in the case of a nonsignatory country countervailing duty "shall be imposed, under regulations prescribed by the administering authority * * *". The administering authority has not prescribed regulations with respect to a § 1675(a) periodic review with the exception of 19 CFR 355.37. Additionally both sections 1671f(a) and (b) refer to a countervailing duty order issued under 19 U.S.C. § 1671e, whereas the increase involved herein, which is the result of a periodic review, is not such an order but rather a final determination made under § 1675(a). Had Congress intended to include § 1675 periodic review matters in § 1671f, it might well have set forth section 1675 in said provision.[2] The conditions required are not met in a situation where the imported merchandise is from a nonsignatory country and the increase in duties is a result of a periodic review.

Accordingly, the Court finds the suspension of liquidation of entries covering non-rubber footwear from India invalid since there is no authority given by law or regulation which would permit such action. It is apparent that Congress intended the revised findings of a periodic review to be effective as of the date of publication of such finding as to entries made or withdrawn from warehouse after said date.[3]

**2.** Section 1671f specifically enumerates sections 19 U.S.C. § 1671b(d)(2), 19 U.S.C. § 1671e, 19 U.S.C. § 1671d(b), 19 U.S.C. § 1671e(a)(3) and 19 U.S.C. § 1677g.

**3.** It is interesting to note that Press Release 116 of the United States Senate Committee on Finance, dated May 8, 1979, at page 5, while not part of the legislative history, is supportive of this position.

In view of the foregoing plaintiff's motion for summary judgment is granted and cross-motion of defendant and intervenor is denied. The District Director shall liquidate or reliquidate the entries in a manner consistent with this decision.

Judgment will be entered accordingly.