**HIDE–AWAY CREATIONS, LTD., Plaintiff,**

v.

**The UNITED STATES, et al., Defendants.**

**CONFECCIONES GENERALES, S.A., Plaintiff,**

v.

**The UNITED STATES, et al., Defendants.**

**Court Nos. 83–5–00644, 83–5–00645.**

United States Court of International Trade.

April 13, 1984.

crimination); *Wade v. Mississippi Cooperative Extension Serv.,* 528 F.2d 508, 517 (5th Cir.1976) (employment discrimination).

BERNARD NEWMAN, Senior Judge:

Although the present matter appeared to the Court at first blush to warrant but a very brief memorandum to accompany a somewhat routine order disposing of these cases, a further careful analysis of a complex facet of our international trade law has thwarted the anticipated summary disposition.

### 1.

In these companion actions, plaintiffs contest the final results of an administrative review of a countervailing duty determination and order of the United States Department of Commerce, International Trade Administration (ITA) conducted pursuant to section 751 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1675, covering imports of leather wearing apparel from Mexico (48 Fed.Reg. 13474 (March 31, 1983)).

Plaintiffs seek to restrain the assessment of countervailing duties and the collection of a cash deposit of estimated countervailing duties of $169,216.18 on their imported merchandise on the ground that the exporter, Confecciones Generales, S.A., received no bounty or grant from the Mexican Government within the meaning of section 303 of the Tariff Act of 1930, 19 U.S.C. § 1303.

The background of this action is set forth in *Hide-Away Creations, Ltd. v. United States; Confecciones Generales, S.A. v. United States*, 6 CIT ——, 577 F.Supp. 1021 (1983) and need not be fully repeated here. Briefly, this Court held that ITA failed to comply with the statutory requirement for publication of notice in the Federal Register concerning the initiation of a section 751 review. Further, this Court concluded that the lack of proper notice prior to the initiation of the first annual review under section 751 prejudiced plaintiffs by ITA's exclusion from consideration of zero rate certifications pertaining to Confecciones Generales, S.A. regarded by ITA as untimely and by ITA's subsequent denial of a zero rate to Confecciones. Consequently, in its order of December 21, 1983, the Court remanded these cases to ITA with

Kemp, Smith, Duncan & Hammond, El Paso, Tex. (Luis Chavez and John J. Scanlon, Jr., El Paso, Tex., of counsel), for plaintiffs.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch and Sheila N. Ziff, Washington, D.C., for defendants.

instructions that within 30 days the agency "review as part of the administrative record in these matters the zero deposit rate certifications pertaining to Confecciones received by ITA on April 21, 1983 and any matters pertinent thereto", and publish in the Federal Register supplemental final results of its administrative review. Temporary injunctions restraining defendants from liquidating any of the entries covered by the final results and from enforcing or implementing the final results were extended to 20 days after the final disposition by the Court following remand. Finally, the order of December 21, 1983 required that certified copies of the supplemental results be transmitted by Commerce to the Clerk of this Court and also served upon plaintiffs.

On January 20, 1984 the Court received from Commerce a certified copy of its "Notice of Supplemental Final Results of Administrative Review of Countervailing Duty Order", dated January 13, 1984, regarding leather wearing apparel from Mexico. According to ITA's notice, on remand Commerce reviewed the certifications previously submitted by Confecciones and determined that "the total bounty or grant for the period was zero for the firm of Confecciones". ITA's notice further indicates that in accordance with the supplemental final results, Commerce will instruct the Customs Service to assess no countervailing duties on shipments of the subject merchandise that were entered, or withdrawn from warehouse, for consumption on or after January 14, 1981 and exported on or before December 31, 1981.

The Court has received a letter dated January 27, 1984 from plaintiffs' counsel advising that plaintiffs have approved the supplemental final results. Thereupon and by letter dated February 1, 1984, this Court requested plaintiffs' counsel to submit an appropriate motion and order disposing of these cases. Presently before the Court is plaintiffs' motion for judgment: approving the supplemental final results; directing the Customs Service to refund all cash deposits of estimated countervailing duties tendered to it for the entry of Mexican

leather wearing apparel during the period January 14, 1981 through December 31, 1981; releasing plaintiffs and their surety from their bond; and allowing interest "as provided by 19 U.S.C. § 1677g".

In a reply letter by defendants' attorney to plaintiffs' counsel, dated March 6, 1984, the Government concedes its statutory obligation to refund the cash deposits of estimated countervailing duties and to release plaintiffs from their bond. Defendants, however, have taken no position respecting plaintiffs' request for the payment of interest which, due to the amount of the deposits, passage of time, and the recent high interest rates, would amount to a substantial figure.

2.

Significantly, the question of the Government's obligation to pay interest under the circumstances presented herein is a matter of first impression and great importance in the administration of our countervailing duty law.

Respecting the payment of interest on amounts deposited as estimated countervailing duties, the Court notes that under 19 U.S.C. § 1677g interest is payable on overpayments of amounts deposited "on merchandise entered, or withdrawn from warehouse, for consumption on and after the date on which *notice of an affirmative [injury] determination by the [International Trade] Commission under section 705(b) or 735(b) [19 U.S.C. § 1671d(b) or 1673d(b)] with respect to such merchandise is published*" (Emphasis added). But as mentioned *supra*, plaintiffs have requested payment of interest on deposits of estimated countervailing duties for entries of Mexican leather wearing apparel during the period January 14, 1981 (date liquidation was suspended in the preliminary affirmative determination) through December 31, 1981 (end of the review period). Inasmuch as Mexico is not a "country under the Agreement" within the meaning of section 701(b) of the Act (19 U.S.C. § 1671(b)), no determination of injury under section 705(b) was required in the coun-

tervailing duty investigation. Hence, unfortunately for plaintiffs, an operative circumstance or condition required by 19 U.S.C. § 1677g (*viz.* notice of an affirmative injury determination under section 1671d(b)) did not, and could not, occur in the present case where the imported merchandise is from a nonsignatory country. *Cf. Ambassador Div. of the Florsheim Shoe Co. v. United States, et al.,* 6 CIT —, 577 F.Supp. 1016 (1983), *appeal pending,* CAFC No. 84–814.[1] Therefore, in the case of a nonsignatory country—as Mexico—the law existing prior to the Trade Agreements Act of 1979, when no interest could be paid by the Government with respect to overpayments of amounts to secure a liability for countervailing duties,[2] is still in effect.

As described, *supra,* plaintiffs have requested that interest be paid on their estimated countervailing duty deposits in connection with entries on and after January 14, 1981, the date of ITA's preliminary affirmative determination. In essence, then, plaintiffs are seeking an award of interest on overpayments more favorable than could be allowed under section 1677g in a case where merchandise is imported from a country under the agreement, for which an injury determination is *required.* As emphasized above, under section 1677g interest on overpayments may be paid only in connection with entries on and after the date of publication of the Commission's final injury determination.

The short of the matter is: since Mexico is not a "country under the Agreement", and thus no determination of injury is required, there simply cannot be any "overpayments * * * of amounts deposited on merchandise entered, or withdrawn from warehouse, for consumption on and after the date on which notice of an affirmative determination by the Commission under section 705(b) * * * with respect to such merchandise is published". 19 U.S.C. § 1677g.[3] Hence, the Court is constrained to conclude that section 1677g does not apply in this case—and therefore plaintiffs are not entitled to the interest they seek.

In view of the foregoing, plaintiffs' motion for judgment: approving the supplemental final results; directing the Customs Service to refund all cash deposits of estimated countervailing duties tendered to it for the entry of Mexican leather wearing apparel during the period January 14, 1981 through December 31, 1981; and releasing plaintiffs and their surety from their bond is granted. Plaintiffs' request for interest under § 1677g is denied.

Judgment will be entered accordingly.

---

1. In *Florsheim,* the Court explained the lack of an injury test respecting a country not under the agreement (577 F.Supp. at 1018–19):

     The Trade Agreements Act of 1979, effective January 1, 1980, enacted a new countervailing duty law, Title VII of the Tariff Act of 1930, as amended, which was subsequently reported as Subtitle IV, Chapter 4, title 19, United States Code. One of the major purposes of the Act was to approve the multilateral trade agreements concluded in 1979 and to implement substantive provisions of United States law. Among the agreements reached during the multilateral trade negotiations was the agreement on Interpretation and Application of Articles VI, XVI, XXII of the General Agreement on Tariffs and Trade ("Subsidies code"). Signatories to the Subsidies Code agreed to impose countervailing duties on all subsidized merchandise after a determination that said merchandise had caused or threatened to cause material injury to a domestic industry. *See* S.Rep. No. 249, 37–38. The United States accepted the Subsidies Code with the qualification that the "injury test" would be applicable only to those countries who were signatories to the code. *See* S.Rep. No. 249, 13. Accordingly, the injury test was applied only to new investigations when the merchandise was imported from a country under the agreement. For countries not under the agreement the law would continue to authorize the imposition of countervailing duties without an injury test. *Id.* 43–44.

2. S.Rep. No. 249, 96th Cong., 1st Sess. 101 (1979), U.S.Code Cong. and Admin.News 1979, pp. 381, 487.

3. Interestingly, although not at issue in this case, we note that section 1677g similarly provides for payment of interest on *underpayments.*