**HIDE–AWAY CREATIONS, LTD., Plaintiff,**

**v.**

**The UNITED STATES, et al., Defendants.**

**CONFECCIONES GENERALES, S.A., Plaintiff,**

**v.**

**The UNITED STATES, et al., Defendants.**

**Court Nos. 83–5–00644, 83–5–00645.**

United States Court of International Trade.

Nov. 21, 1984.

Kemp, Smith, Duncan & Hammond (Luis Chavez and John J. Scanlon, Jr., El Paso, Tex., of counsel), for plaintiffs.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch and Sheila N. Ziff, Washington, D.C., for defendants.

Collier, Shannon, Rill & Scott, Washington, D.C. (Lauren R. Howard and Michael R. Kershow, Washington, D.C., of counsel), for amicus curiae, Footwear Industries of America, Inc.

NEWMAN, Senior Judge:

## Introduction

The matter presently before the Court raises an issue of fundamental importance to the administration of our countervailing duty law: whether the Government is obligated by 19 U.S.C. § 1677g to pay interest on overpayments of amounts deposited as estimated countervailing duties in cases arising under 19 U.S.C. § 1303.

The parties, by motions for rehearing, seek reconsideration of the decision and amendment of the judgment in these companion cases dated April 13, 1984 (7 CIT ——, 584 F.Supp. 18), respecting this Court's holding that plaintiffs are not entitled to interest on overpayments of amounts deposited for estimated countervailing duties in connection with entries of leather wearing apparel from Mexico. Footwear Industries of America, Inc. participated in the current proceedings as *amicus curiae* in support of plaintiffs' and defendants' motions for rehearing.

Both parties contend that section 1677g requires interest be paid on overpayments of estimated countervailing duties in cases arising under section 1303, but they disagree as to the entries that are eligible for such interest.[1] There is no dispute that the amounts deposited representing overpayments ($169,216.18) must be refunded.

## Background

By decision of this Court dated December 21, 1983 (6 CIT ——, 577 F.Supp. 1021) these cases were remanded to the United States Department of Commerce, International Trade Administration (ITA) for further proceedings in connection with its first annual review pursuant to section 751 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1675 (section 751) covering entries of leather wearing apparel from Mexico for the period January 14, 1981 through December 31, 1981, 40 Fed.Reg. 13474 (March 31, 1983). In brief, this Court held that ITA failed to comply with the statutory requirement for publication of notice in the Federal Register of the initiation of a section 751 review. Further, this Court found that the lack of proper notice prejudiced plaintiffs by ITA's refusal to consider zero deposit rate certifications submitted by Confecciones, which were regarded by ITA as untimely, and by ITA's subsequent denial of a zero deposit rate to Confecciones. The Court remanded the case directing ITA to: 1) review as part of the administrative record Confecciones' zero deposit rate certifications and any matters pertinent thereto; 2) publish in the Federal Register supplemental final results of its review; 3) file those results with the Clerk of this Court; and 4) to serve the supplemental final results upon plaintiffs.[2]

In compliance with the Court's direction, on January 20, 1984 ITA submitted to the Court its "Notice of Supplemental Final Results of Administrative Review of Countervailing Duty Order" regarding leather wearing apparel from Mexico, dated January 13, 1984. The notice indicated that on remand ITA had reviewed Confecciones' zero deposit rate certifications and determined that "the total bounty or grant for the period was zero for the firm of Confecciones". ITA's notice further indicated that in accordance with the supplemental

---

**1.** The Government previously took no position on the issue presented here. See discussion *infra* under "Background".

**2.** The Court extended the temporary injunctions that were then in effect in these actions to twenty days after final disposition by the Court following remand.

final results, ITA would instruct Customs to assess no countervailing duties on shipments of plaintiffs' leather wearing apparel from Mexico that were entered, or withdrawn from warehouse, for consumption on or after January 14, 1981 and exported on or before December 31, 1981.

Thereafter, the Court received a letter from plaintiffs' counsel dated January 27, 1984 advising that plaintiffs approved ITA's supplemental final results. By letter dated February 1, 1984, this Court requested plaintiffs' counsel to submit an appropriate motion and order, preferably consented to by defendants, disposing of these cases. Subsequently, counsel for both parties conferred on the appropriate form of a consent motion and order for judgment, but were unable to agree on a proposed order.

In their proposed order, plaintiffs sought judgment: 1) approving ITA's supplemental final results; 2) releasing plaintiffs and their surety from their bond; 3) directing the Customs Service to refund all cash deposits of estimated countervailing duties tendered by Hide-Away to Customs for the entry of Mexican leather wearing apparel during the period January 14, 1981 through December 31, 1981; and 4) directing the Customs Service to pay interest on *all* such cash deposits under 19 U.S.C. § 1677g. Defendants' counsel wrote on March 6, 1984 to plaintiffs' counsel stating that "[w]e cannot agree to a motion and order which requires Commerce to do what it is statutorily mandated to do, *i.e.*, refund cash deposits of estimated countervailing duties and release plaintiff from its bond". Moreover, for reasons known only to themselves, defendants took no position respecting plaintiffs' request for the payment of interest.

For the reasons stated in its decision of April 13, 1984 (7 CIT ——, 584 F.Supp. 18) this Court: 1) affirmed ITA's supplemental final results; 2) released plaintiffs and their surety from their bond; 3) directed Customs to refund all of Hide-Away's cash

deposits of estimated countervailing duties; and 4) denied plaintiffs' request for interest.

### Why Interest Was Denied

In essence, the Court denied plaintiffs' request for interest under 19 U.S.C. § 1677g because that provision, by its terms, provides for the payment of interest on overpayments[3] of amounts deposited as estimated countervailing duties "on merchandise entered, or withdrawn from warehouse, for consumption on and after the date on which notice of an affirmative [injury] determination of the [International Trade] Commission ["ITC"] under section 705(b) or 735(b) [19 U.S.C. § 1671d(b) or 1673d(b)] with respect to such merchandise is published". The Court reasoned that inasmuch as Mexico is not a "country under the Agreement" within the meaning of 19 U.S.C. § 1671b (Mexico is a nonsignatory to the Agreement on Interpretation and Application of Articles VI, XVI and XXIII of the General Agreement on Tariffs and Trade ("Subsidies Code")) no injury determination by the ITC under 19 U.S.C. § 1671d(b) was required in order to impose countervailing duties. Thus, an operative circumstance or prerequisite for the payment of interest under 19 U.S.C. § 1677g— *viz.*, notice of an affirmative injury determination under section 1671d(b)—did not, and could not, occur. Consequently, the Court determined that in the case of a nonsignatory country such as Mexico, the law existing prior to the Trade Agreements Act of 1979, when no interest could be paid by the Government respecting overpayments of amounts to secure a liability for countervailing duties, is still in effect.

It was further noted that plaintiffs seek interest on their deposits of estimated countervailing duties in connection with entries on and after *January 14, 1981*, the date of ITA's preliminary affirmative determination. Such an award, if granted, would be more favorable than could be

---

**3.** The Court notes that 19 U.S.C. § 1677g provides for interest on underpayments of estimat-    ed countervailing duties as well.

allowed under 19 U.S.C. § 1677g in the case of merchandise imported from a country under the Agreement for which an injury determination is required. Concluding, the Court emphasized that in the case of merchandise from countries under the Agreement, 19 U.S.C. § 1677g provides for interest on overpayments only with respect to entries on and after the date of publication of the ITC's injury determination.

## Opinion

Plaintiffs and defendants, as well as *amicus*, contend that the Court erred in holding that plaintiffs were not entitled to interest on amounts deposited as estimated countervailing duties. Accordingly, plaintiffs request that Point 4 of this Court's order of April 13, 1984 be modified to award them interest on their cash deposits of estimated countervailing duties tendered to Customs for the entry of Mexican leather wearing apparel during the period *January 14, 1981* (date liquidation was suspended in the preliminary affirmative determination) through December 31, 1981 (end of the review period); that interest be allowed at the annual rate or rates established by section 6621 of the Internal Revenue Code as provided 19 U.S.C. § 1677g; and that the interest be *calculated from* April 10, 1981 (date ITA published notice of its final affirmative countervailing duty determination) to the date plaintiffs' entries during the period of January 14, 1981 through December 31, 1981 are liquidated. Although defendants and *amicus* agree that interest should be paid on plaintiffs' cash deposits of estimated countervailing duties, they are of the view that interest is payable only on such deposits made in connection with *entries* of Mexican leather wearing apparel *on and after April 10, 1981* —the date of ITA's final affirmative countervailing duty determination—through December 31, 1981.

For the reasons below, the Court holds that plaintiffs are entitled to interest on their cash deposits of estimated countervailing duties, but that such interest is payable only on deposits made in connec-

tion with entries on and after April 10, 1981, the date of ITA's final affirmative countervailing duty determination.

Prior to enactment of the Trade Agreements Act of 1979, Pub.L. No. 96–39, 93 Stat. 144 ("the Act"), effective January 1, 1980, our countervailing duty law (*viz.*, section 303 of the Tariff Act of 1930, 19 U.S.C. § 1303) did not (except in certain cases) require an injury determination as a condition precedent to the imposition of countervailing duties upon imported merchandise benefitting from a subsidy. In order to conform United States law to the Subsidies Code, such an injury test was included in the Act. The test, however, was intended to be applicable to only those countries who were signatories to the Subsidies Code. S.Rep. No. 249, 96th Cong., 1st Sess. 13, *reprinted in* 1979 U.S.Code Cong. & Ad. News 399. For nonsignatories to the Subsidies Code, countervailing duties would continue to be imposed without an injury determination. S.Rep. No. 249 at 43–44, 1979 U.S.Code Cong. & Ad.News 429–430.

The new countervailing duty law (Title VII added to the Tariff Act of 1930 by the Trade Agreements Act of 1979) not only introduced a "material injury" test, but also included a number of other important provisions. One such provision pertinent here is section 778 of the Act, 19 U.S.C. § 1677g, providing for interest on overpayments and underpayments of deposits. As explained in Slip Op. 84–41, prior to the Act no interest was allowed on overpayments or underpayments of amounts deposited by an importer to secure a liability for countervailing duties.

To reiterate, in 7 CIT ——, 584 F.Supp. 18 the Court held that plaintiffs were not entitled to interest because Mexico is not a signatory to the subsidies code, and therefore, no injury determination by the Commission was required or was made in the present case. The Court has carefully considered the arguments of counsel for the parties and of *amicus* and must agree that in the present cases interest must be allowed, but only in connection with cash deposits of estimated countervailing duties

on shipments of Mexican wearing apparel entered, or withdrawn from warehouse for consumption, on and after April 10, 1981 through December 31, 1981, if any.

As part of the new countervailing duty law, Congress amended 19 U.S.C. § 1303 to provide, in relevant part, as follows:

(b) The duty imposed under subsection (a) of this section shall be imposed, under regulations prescribed by the administering authority ..., in accordance with subtitle IV of this chapter [19 U.S.C. § 1671 *et seq.*] (relating to the imposition of countervailing duties) except that, in the case of any imported article or merchandise which is not free of duty—

(1) no determination by the United States International Trade Commission under section 1671b(a), 1671c, or 1671(b) of this title shall be required,

 * * * * * *

(4) any reference to determinations by the Commission, or to the suspension of an investigation under section 1671c(c) of this title which are not permitted or required by this subsection shall be disregarded.

It appears from a reading of 19 U.S.C. § 1303(b) that one of the major differences between section 1303 proceedings (for countries not "under the Agreement") and those pursuant to 19 U.S.C. § 1671, *et seq.* (for countries "under the Agreement"), is that section 1671, *et seq.* require an affirmative injury determination by the ITC prior to the issuance of a countervailing duty order. That there is no other relevant difference in the applicable procedures is established by virtue of the reference in section 1303(b) to the provisions of 19 U.S.C. § 1671, *et seq.*, and the requirement that "any reference to determinations by the Commission ... which are not permitted or required by ... [section 1303(b)] shall be disregarded." *See Industrial Fasteners Group, American Importers Association v. United States*, 2 CIT 181, 184, 525 F.Supp. 885 (1981); S.Rep. No. 249, at 103–104, 1979 U.S.Code Cong. & Ad.News, at 489–490.

Congress specified, with certain exceptions not pertinent to this case, that countervailing duties under section 1303 be imposed in accordance with the provisions contained in 19 U.S.C. § 1671 *et seq.;* hence the provisions of 19 U.S.C. § 1677g concerning interest on overpayments (and the collection of interest on underpayments) of estimated countervailing duties are also applicable to deposits of estimated countervailing duties imposed under section 1303.

It appears that interest is payable under 19 U.S.C. § 1677g in cases where section 1303 is applicable, but significantly the statute is silent as to the particular entries that are eligible for such interest. To simply "disregard" the reference in section 1677g to an injury determination, as required by 19 U.S.C. § 1303(b)(4)—without more—would leave a vital gap in the statute. While under section 1677g the Government is directed to pay interest on overpayments of countervailing duty deposits, Congress did not prescribe the time frame within which entries would be eligible for such interest in cases arising under section 1303. Congress did, however, direct the administering authority to prescribe regulations in accordance with the applicable provisions of Title VII for cases arising under 19 U.S.C. § 1303, as is clearly stated in section 1303(b): "The duty imposed under subsection (a) shall be imposed, under regulations prescribed by the administering authority ... in accordance with title VII of this Act...." Unfortunately, no regulation pertinent to the parties' disagreement in interpretation of section 1677g has been promulgated by ITA (indeed, no such regulation has been called to the Court's attention).

Since Congress has not expressly addressed the issue of the time frame for which interest is to be paid in the absence of a final affirmative injury determination by the Commission (nor has ITA addressed that issue by regulation), "the court must extrapolate congressional intent from areas where the expression of intent is clear, applying the more generally expressed intent to the specific issue before it". *Na-*

*tional Wildlife Federal v. Gorsuch,* 530 F.Supp. 1291 (D.D.C.1982). *Cf., Asahi Chemical Industry Company, Ltd. v. United States,* 4 CIT 120, 548 F.Supp. 1261 (1982); *Diversified Products Corporation v. United States,* 6 CIT ——, 572 F.Supp. 883 (1983).

While plaintiffs and (now) defendants agree that all overpayments of estimated countervailing duty deposits must be refunded, they do not agree as to the entries for which interest must be paid pursuant to section 1677g.[4] As noted *supra,* plaintiffs seek interest on cash deposits of estimated countervailing duties for *entries* during the period January 14, 1981 through December 31, 1981, with interest to be *calculated from* April 10, 1981, the date ITA published notice of its final affirmative countervailing duty determination, to the date the entries are liquidated. Defendants and *amicus,* on the other hand, maintain that under section 1677g interest must be paid only with respect to entries on or after April 10, 1981 through December 31, 1981. Essentially, then, defendants and *amicus* insist that plaintiffs are not entitled to interest respecting entries made prior to April 10, 1981.

The Court agrees with the interpretation urged by defendants and *amicus.*

In specifying which entries would be eligible for interest under 19 U.S.C. 1677g, Congress chose the point in an investigation at which an importers' liability for countervailing duties first becomes fixed—that is, upon ITC's final affirmative injury determination. Following the injury determination, all that remains, then, is the purely ministerial task of publication by ITA of a countervailing duty order "[w]ithin 7 days after being notified by the Commission of an affirmative determination under section 705(b)." *See* 19 U.S.C. § 1671e(a) (1982). *Cf., Royal Business Machines, Inc. v. United States,* 1 CIT 80,

86, 507 F.Supp. 1007, 1012 (1980). Where investigations under 19 U.S.C. § 1303 do not require an injury finding by the ITC, the last substantive determination is ITA's final affirmative determination that a "bounty or grant" is being received within the meaning of section 1303. At that point, all the prerequisites for the imposition of countervailing duties on merchandise from countries not "under the Agreement" are satisfied.[5] It is reasonable, therefore, in applying 19 U.S.C. § 1677g to the context of an investigation under 19 U.S.C. § 1303, that interest be paid only in connection with entries on and after the date of ITA's final affirmative countervailing duty determination.

■ The short of the matter is: by its retention and amendment of 19 U.S.C. § 1303 for countervailing duty investigations concerning imports from countries not "under the Agreement", Congress intended that the injury determination required by the Subsidies Code and implemented by the new Title VII of the Act would be inapplicable to countries not "under the Agreement". In all other respects, with the exception of certain specifically exempted provisions, the new procedures of Title VII were made fully applicable to countervailing duty orders issued under 19 U.S.C. § 1303.

Furthermore, the Court finds that the most reasonable construction of section 1677g in proceedings under section 1303 is that urged by defendants and *amicus.*

### Conclusion

In view of the conclusions reached above it is hereby ordered:

1. The parties' motions for rehearing are granted.

2. Point 4 of this Court's judgment in Slip Op. 84–41 issued on April 13, 1984 is amended to read as follows:

**4.** Defendants previously raised no issue concerning the *entries* that are eligible for payment of interest.

**5.** Significantly, it has been ITA's practice to publish notice of a countervailing duty order under

19 U.S.C. § 1303 concurrently with publication of the corresponding notice of its final affirmative determination. The countervailing duty order in the instant case is in point. *See* 46 Fed.Reg. 21,357 (1981).

Interest shall be paid plaintiffs on their cash deposits of estimated countervailing duties in connection with Mexican leather wearing apparel entered, or withdrawn from warehouse, for consumption on or after April 10, 1981 through December 31, 1981, if any.