The TIMKEN COMPANY, Plaintiff,

v.

UNITED STATES, Defendant,

and

Koyo Seiko Co., Ltd. and Koyo Corporation of U.S.A.; NSK Ltd. and NSK Corporation, Defendants–Intervenors.

No. 90–06–00313.

United States Court of International Trade.

Oct. 25, 1991.

Stewart and Stewart (Eugene L. Stewart, Terence P. Stewart and James R. Cannon, Jr.), for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice (Velta A. Melnbrencis), Joan L. Mackenzie, Attorney–Advisor, Office of Chief Counsel for Import Admin., U.S. Dept. of Commerce, of counsel, for defendant.

Powell, Goldstein, Frazer & Murphy (Peter O. Suchman, Richard M. Belanger, Susan P. Strommer, Eric G. Stockel and Robert Torresen, Jr.), for defendants-intervenors Koyo Seiko Co., Ltd. and Koyo Corp. of U.S.A.

Donohue and Donohue (Joseph F. Donohue, Jr., James A. Geraghty and Kathleen C. Inguaggiato), for defendants-intervenors NSK Ltd. and NSK Corp.

## OPINION

TSOUCALAS, Judge:

Plaintiff, The Timken Company ("Timken"), brought this action to challenge the final results of an administrative review conducted by the Department of Commerce, International Trade Administration ("Commerce" or "ITA"), of an outstanding affirmative dumping finding dating back to 1976. *Tapered Roller Bearings Four Inches or Less in Outside Diameter from Japan; Final Results of Antidumping Duty Administrative Review,* 55 Fed.Reg. 22,369 (June 1, 1990). The matter is presently before the Court to determine whether Commerce erred in concluding that importers are not liable for interest on any duties to be assessed on the entries subject

to the 1976 finding. The Court heard oral argument on September 11, 1991.

## Background

In 1974, the United States Treasury Department ("Treasury"), the agency then responsible for the administration of the antidumping laws, conducted a sales at less than fair value ("LTFV") investigation of 0–4 inch tapered roller bearings ("TRBs") and TRB components from Japan. The investigation resulted in a determination of affirmative dumping for, among other importers, Koyo Seiko Co., Ltd., Koyo Corporation of U.S.A. (collectively "KOYO") and Nippon Seiko K.K., NSK Corporation (collectively "NSK")[1], defendants-intervenors herein. *Tapered Roller Bearings From Japan AntiDumping; Determination of Sales at Less Than Fair Value,* 39 Fed. Reg. 32,337 (Sept. 3, 1974). Treasury immediately halted appraisement proceedings for all subject entries pending an injury determination by the United States International Trade Commission ("ITC"). The ITC subsequently determined that an industry in the United States was likely to suffer material injury by reason of the LTFV sales and, Treasury issued a "dumping finding" on August 18, 1976. T.D. 76–227. However, for reasons that are somewhat obscure, Treasury never calculated estimated dumping margins. *Defendant's Opposition to Plaintiff's Motion for Partial Judgment Upon the Administrative Record* at 6. Consequently, importers were not required to make actual cash deposits, "although some of them may have posted bonds pursuant to Customs regulations." *Id.*

On January 2, 1980, the administration of antidumping laws was transferred from Treasury to the Department of Commerce by virtue of the Trade Agreements Act of 1979 ("the 1979 Act"). Besides transferring the responsibility for enforcement of the dumping laws the 1979 Act provided for the annual review of all unliquidated entries subject to outstanding dumping findings. Accordingly, Commerce com-

---

**1.** During the pendency of this action, the Court granted a motion filed by defendant-intervenor Nippon Seiko, K.K. and NSK Corporation, seeking a name change in the case caption. Defendant-intervenor's new name of record is NSK Ltd. and NSK Corporation.

menced conducting annual administrative reviews of all unliquidated TRB entries subject to T.D. 76–227. These reviews were discontinued in 1984, however, when section 751 of the Tariff Act of 1930, codified at 19 U.S.C. § 1675 (1982 & 1984 Supp.), was amended to provide that administrative reviews be conducted upon request only.

As prescribed by the revised 19 U.S.C. § 1675(a), Timken requested a review of all unliquidated entries of 0–4 inch TRBS imported by KOYO and NSK dating back to 1974. Pursuant to Timken's request, Commerce reinitiated the reviews of all entries subject to T.D. 76–227 and issued the final results of its review on June 1, 1990. Finally, some fourteen years after the issue of the original dumping finding, Commerce established dumping margins for the importers: 18.81–35.89% for KOYO and 4.99–23.43% for NSK. 55 Fed.Reg. at 22,382. However, since the review results are being challenged in this court by both the importers and Timken, liquidation has been enjoined pending a final disposition.

Timken filed the instant action challenging certain aspects of Commerce's review results. Among the aspects with which Timken takes issue is Commerce's position regarding the importers' liability for interest on dumping duties to be assessed on their entries dating back to the original withholding of appraisement. Commerce maintains that there is no statutory authority for the imposition of interest in this case because the pertinent interest provision applies only where cash deposits are involved. Since, here, the merchandise was entered upon bonds, interest cannot be imposed pursuant to 19 U.S.C. § 1677g.

Nevertheless, plaintiff argues, on a variety of theories, that Commerce is statutorily required to collect interest from the importers on the dumping duties to be assessed on merchandise encompassed by this review, despite the fact that the duties have not yet been assessed nor their payment required. Commerce's failure to direct Customs to collect interest in this instance, Timken maintains, would amount to an interest-free loan to the importers, thereby compounding the injury to the domestic industry.

### Discussion

*Jurisdiction*

■ Since defendants-intervenors have challenged the Court's jurisdiction over the issue of interest, it is well to address this matter at the outset. KOYO and NSK maintain the interest issue is not appertain to the underlying dumping determination, but rather is a protestable matter of duty assessment and collection by Customs, and as such is not properly before the Court at this time. Defendants-intervenors cite our appellate court's decision in *Nichimen America, Inc. v. United States*, 938 F.2d 1286 (Fed.Cir.1991) in support of this contention.

In a case such as this, any discussion of jurisdictional propriety requires an analysis of the statutory scheme for judicial review pursuant to the Antidumping Act of 1921, as well as, the 1979 Act. Under the Antidumping Act of 1921, after Treasury issued a dumping finding, Customs was charged with the determination, assessment and eventual collection of the dumping duties assessed. An interested party could challenge any aspect of these procedures by filing a protest with Customs. 19 U.S.C. § 1514(a) (1976). If the protest was denied, a legal action seeking judicial review of the denial could be commenced in the Customs Court pursuant to 28 U.S.C. § 2632 (1976).

The 1979 Act changed the statutory scheme of antidumping duty law. Title X of the Act, however, specifically provided that outstanding dumping findings issued pursuant to the Antidumping Act of 1921 would remain in effect, subject to review under section 751 of the Tariff Act of 1930.

Section 751 states in pertinent part:

**(a) Periodic review of amount of duty**

**(1) In general**

At least once during each 12-month period beginning on the anniversary of the date of publication of a countervailing duty order under this subtitle or under section 1303 of this title, an antidumping duty order under this subtitle or a finding under the Antidumping

Act, 1921, or a notice of the suspension of an investigation, the administering authority, if a request for such a review has been received and after publication of notice of such review in the Federal Register, shall—

(A) review and determine the amount of any net subsidy,

(B) review, and determine (in accordance with paragraph (2)), the amount of any antidumping duty, and

. . . .

and shall publish the results of such review, together with notice of any duty to be assessed, estimated duty to be deposited, or investigation to be resumed in the Federal Register.

**(2) Determination of antidumping duties**

For the purpose of paragraph (1)(B), the administering authority shall determine—

(A) the foreign market value and United States price of each entry of merchandise subject to the antidumping duty order and included within that determination, and

(B) the amount, if any, by which the foreign market value of each such entry exceeds the United States price of the entry.

The administering authority, without revealing confidential information, shall publish notice of the results of the determination of antidumping duties in the Federal Register, and that determination shall be the basis for the assessment of antidumping duties on entries of the merchandise included within the determination and for deposits of estimated duties.

In the event that an interested party disagreed with Commerce's determination issued pursuant to a section 751 review, the final results could be challenged in this court. 19 U.S.C. § 1516a(a)(2) (1988). Any actions undertaken by Customs in the course of implementing Commerce's challengeable determination, however, were made final and conclusive on all parties unless the underlying determination was challenged under section 1516a. 19 U.S.C. § 1514(b) (1988).

At first glance, it seems rudimentary that since a section 751 review of the outstanding finding was effected, and the parties objected to the results embodied in the determination, 19 U.S.C. § 1516a confers jurisdiction upon this court to resolve any challenge stemming from the determination. Defendants-intervenors, however, insist that *Nichimen* requires a different result. The Court is not persuaded by this argument.

The issue before the court in *Nichimen* was whether a section 751 review determination could give rise to judicial review of a broad range of issues. The court found several claims directly related and jurisdictionally grounded upon the determination, while other claims were found to be too far removed from the determination to be considered ancillary. The claims which were rejected: (1) the propriety of a settlement agreement entered into by the government, and (2) Customs' failure to comply with its own procedures in the appraisement and liquidation of merchandise, were found to be fully outside the scope of Commerce's authority.

Additionally, the court in *Nichimen* noted on numerous occasions that the rejected claims fell squarely within the listing of matters protestable to Customs under 19 U.S.C. § 1514(a). By way of contrast, Customs' actions in dispatching Commerce's mandate not to collect interest could not be protested under 19 U.S.C. § 1514(a). Indeed, Customs failure to collect interest from the importers would constitute just the type of act made final and conclusive under 19 U.S.C. § 1514(b). Therefore, unless plaintiff challenges Commerce's underlying determination not to require interest, it will be left without any means to challenge that decision. The Court cannot envision this result to be intended by our appellate court.

Moreover, the *Nichimen* court acknowledged that certain ancillary issues not expressly specified in the statute *could and should* properly be considered and determined in connection with a 751 review. 938

F.2d at 1292. The applicability of 19 U.S.C. § 1677g to the entries encompassed by T.D. 76–227 is precisely this type of ancillary question which can and, indeed, must be determined at this juncture. Unlike the ministerial function of duty collection, the determination of whether section 1677g applies is solely within Commerce's discretion. Therefore, the decision not to recommend the imposition of interest necessarily constitutes a component of Commerce's final determination reviewable by this court pursuant to 19 U.S.C. § 1516a.

Thus, our appellate court's decision in *Nichimen* acknowledging that, pursuant to a section 751 review, jurisdiction exists for the adjudication of supplementary issues within the discretion of the administering agency, supports this Court's conclusion herein.

*Interest issue*

■ Having determined the jurisdictional propriety of this action, a reminder of this court's powers to review agency action is in order. The court shall affirm a determination or finding that is supported by substantial evidence and is otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B) (1988). "Under this standard, Commerce is granted considerable deference in its interpretation of its statutory authority." *Tehnoimportexport v. United States*, 15 CIT ——, ——, 766 F.Supp. 1169, 1173 (1991) (citations omitted). Since plaintiff here challenges Commerce's interpretation of its statutory mandate, it bears the burden of establishing that the agency's construction is clearly erroneous and contrary to expressed legislative intent.

■ The provision allowing interest on the variances between antidumping duties actually collected and the duties owed is a relatively recent development. Under the Antidumping Act of 1921, Treasury had no statutory authority to impose interest on underpayment of duties, nor did it pay interest on overpayments.

The substantial lag between the issuance of dumping orders and the actual collection of dumping duties, however, concerned Congress. In 1978, in hearings before the Subcommittee on Trade of the Committee on Ways and Means, Committee Chairman Vanik raised the issue of duty collection and introduced the matter of interest. Mr. Vanik noted, while discussing the deferred assessment and payment of antidumping duties with Mr. Mundheim, General Counsel of Treasury:

> Mr. Vanik ... And the second question that I would raise: What about the matter of interest? ... What about our right to impose some interest on this?
>
> . . . .
>
> So you know we are losing every day there is a delay in collection. Are you doing anything about interest? Shouldn't there be something done about interest?
>
> Mr. Mundheim. Your statement is certainly correct, and it's correct from the point of the time that the goods enter, that duties ought to be assessed and collected with respect to them; if they are not, somebody has interest-free use of the money, and that is not normally a desirable situation.
>
> I think one of the difficulties, Mr. Chairman, is that the *statute does not authorize* either the collection of interest in connection with duties—[interruption by Mr. Vanik] assessed, or if duties have been previously paid and overpaid and refunded, we don't pay any interest on that refund. The statute simply doesn't provide for that.

*Assessment and Collection of Duties Under the Antidumping Act of 1921: Hearing Before the Subcommittee on Trade of the Committee on Ways and Means,* 95th Cong., 2nd Sess. 42–43 (1978) (emphasis added).

Chairman Vanik repeatedly expressed his concern over Commerce's procedure of interest-free deferred duty collection and suggested a change in legislation to correct the situation:

> Mr. Vanik. And it would seem to me that there ought to be—I don't know that we should have to spell out in every statute that "Interest must be collected."

I think if there is a claim made, the claim should include an interest charge *from the date it was assessed and determined to be due.*

. . . .

I think this upfront procedure suggested by Mr. Mundheim [referring to the proposed requirement to collect estimated cash deposits at entry] is a good suggestion. I think we will look at that, and I certainly urge my colleagues to *put that into the statute along with the interest assessment.*

*Id.* at 59–60 (emphasis added).

Congress considered these hearings and sought to enact legislation in the 1979 Act that would deal effectively with the concerns expressed therein. Specifically, it acknowledged that

[u]nder current practice, if the *security* posted to cover the estimated liability for special dumping duties is different from the actual duty imposed, the difference is refunded or collected, as the case may be, without interest.

S.Rep. No. 249, 96th Cong., 1st Sess. 76–77, *reprinted in* 1979 U.S.Code Cong. & Admin.News 381, 463 (emphasis added). In order to accelerate duty collection, the proposed legislation would require the imposition of interest whenever there existed a difference between the *estimated duties deposited* and the duties actually assessed. *Id.*

The 1979 Act introduced both the provision requiring actual cash deposits of estimated dumping duties pending liquidation (codified at 19 U.S.C. § 1673e(a)(3) (1988)), as well as a corresponding provision requiring the imposition of interest whenever the estimated duties on deposit differed from the actual duties due. 19 U.S.C. § 1677g(a) (1982). The latter section, upon which plaintiff bases its primary argument, provides:

**(a) General rule**

Interest shall be payable on overpayments and underpayments of *amounts deposited* on merchandise entered, or withdrawn from warehouse, for consumption on and after the date on which notice of an affirmative determina-

tion by the Commission under section 1671d(b) or 1673d(b) of this title with respect to such merchandise is published. (Emphasis added).

Against the legislative backdrop mentioned *infra,* Commerce interpreted this provision and, in relation to this case, has concluded that:

Section 778 of the Tariff Act provides that interest is payable on underpayments of amounts deposited on merchandise entered, or withdrawn from warehouse, for consumption on and after the date of a finding under the Antidumping Act of 1921. We have concluded that the words *"amounts deposited" refer only to cash deposits of estimated antidumping duties upon entry and not to other kinds of security such as a bond,* because the Tariff Act repeatedly links the word "deposit" to "cash" (see, e.g., sections 733(d)(2), 734(f)(2)(A)(iii), and 735(c)(3)(B) of the Tariff Act). Thus, *since a bond is not cash, it does not constitute an "amount deposited."*

The Trade Agreements Act of 1979 ("the 1979 Act") contained no provision for the immediate conversion of existing antidumping findings from bonds to cash. Section 106(a) of the 1979 Act merely provided that outstanding antidumping findings would remain in effect and would be subject to review under section 751 of the Tariff Act. Section 751(a)(2) provides that the administrative review "shall be the basis for . . . deposits of estimated duties." Thus, the legal basis for requiring cash deposits under the 1979 Act is a review under section 751 of the Tariff Act or an order pursuant to section 736 of the Tariff Act. The Department is without power to require the imposition of a cash deposit until the completion of an administrative review. In any event, since interest is only collectible on cash deposits, interest would accrue only from the time that Customs required deposit of cash. Consequently, interest would not be retroactive to the time of entry under bond.

55 Fed.Reg. at 22,370 (emphasis added).

As plaintiff correctly notes, the latitude allowed Commerce in the interpretation of

this and all other statutory provisions is necessarily circumscribed by Congress' expressed intent in enacting the provision. Congress' concern with the expedited assessment and collection of antidumping duties is equally incontrovertible. Indeed, it was precisely this concern that served as impetus for the legislation requiring actual cash deposits rather than bonds to satisfy estimated duty requirements, as well as, the interest provision. The legislative history of these provisions, however, supports Commerce's conclusion that the provision requiring cash deposits of estimated duties and the interest provision were intended to operate simultaneously.

In fact, Congress acknowledged that the existing practice of accepting security to secure future payment of dumping duties did not provide a scheme for the imposition of interest. The change in legislation, therefore, was intended to require *actual deposits* of estimated duties at entry and then impose interest on any overpayments or underpayments created by the eventual assessment of actual dumping duties owed. S.Rep. No. 249, 96th Cong., 1st Sess. 77, *reprinted in* 1979 U.S.Code Cong. & Admin.News 381, 463. It is reasonable to conclude, then, that these sections were developed and enacted simultaneously further implies that Congress intended them to function concurrently.

Finally, this court has examined the applicability of section 1677g on only two occasions since its enactment: *Hide–Away Creations, Ltd. v. United States,* 8 CIT 286, 598 F.Supp. 395 (1984), and *Canadian Fur Trappers Corp. v. United States,* 12 CIT 612, 691 F.Supp. 364 (1988), *aff'd,* 884 F.2d 563 (Fed.Cir.1989). Although in both instances the court sanctioned the imposition of interest, neither court contemplated the relationship between actual cash deposits and the imposition of interest.

Plaintiff, however, finds these cases to be virtually indistinguishable from the case at bar because there, as in the instant action, the underlying duty order predated

the enactment of the interest statute. Timken maintains, therefore, that the court's rationale in those cases dictate a disposition in its favor herein.

Indeed, both *Hide–Away Creations* and *Canadian Fur Trappers* sanctioned the imposition of interest pursuant to 19 U.S.C. § 1677g. It is also true, as plaintiff notes, that the underlying orders involved in these cases were in effect before the interest provision was enacted. However, plaintiff fails to note the significant differences that exist between those cases and the action at bar.

In *Hide–Away Creations,* the court maintained that the importers could be entitled to interest on their cash deposits of estimated countervailing duties because, in actions arising under 19 U.S.C. § 1303,[2] the requirement of an ITC determination in order to invoke the interest provision could be disregarded. 8 CIT at 291–92, 598 F.Supp. at 399. At no point did the court attempt to ascertain whether section 1677g equates "amounts deposited" with bonds or other forms of security other than cash. Quite the contrary, the court's conclusion that "interest must be allowed, but only in connection with *cash deposits* of estimated countervailing duties," further implies that it is the existence of cash deposits which triggers the application of the interest provision. 8 CIT at 291, 598 F.Supp. at 398 (emphasis added).

Similarly, the court in *Canadian Fur Trappers,* found that Commerce properly interpreted 19 U.S.C. § 1677g to require the imposition of interest on the underpayment of countervailing duties. Again in this case, the issue involved the applicability of section 1677g to actions arising under 19 U.S.C. § 1303. As in *Hide–Away Creations,* the court's countless references to "deposits" where cash deposits were actually collected, imply that the applicability of the interest provision was deemed predicated on the existence of such deposits.

Significantly, both *Hide–Away Creations* and *Canadian Fur Trappers* in-

---

**2.** The issue in *Hide–Away Creations* concerned the applicability of procedures introduced by Title VII of the Trade Agreements Act of 1979

(including the interest provision), to countervailing duty actions arising under § 1303.

volved *actual cash deposits* of estimated countervailing duties which, upon a § 751 review, were found to be deficient. Equally important, both of the cited cases involved countervailing duty orders for which an estimated duty rate was established at the time the Treasury order was issued. In stark contrast, the case herein does not involve a deficiency in estimated duty deposits, but rather it relates to the use of a bond to secure future payment of any dumping duties later found to be due.

Additionally, it is of considerable factual significance that this case involves a dumping finding instead of a countervailing duty order. Unlike the pre–1980 countervailing duty orders issued by Treasury which established a preliminary duty rate at which countervailing duties could be deposited at time of entry, this action is underlied by a dumping finding which did *not* establish an estimated duty rate, so there was no way in which to estimate the importer's liability to require payment.

Hence, the caselaw cited by plaintiff as being dispositive of this issue is actually inapposite. Plaintiff fails to note the crucial element in this case, *i.e.*, that while section 1677g contemplates the existence of cash deposits, no actual deposits were made herein. Moreover, to argue that the language of the statute does not differentiate between cash and other forms of security ignores the legislative intent that estimated duties be satisfied with cash rather than bonds.

■ Plaintiff's alternative arguments: that interest should be imposed pursuant to 19 U.S.C. § 580 (1988), or in equity, are equally without merit. Section 580 is inapplicable here because this action was *not* commenced by the Government to recover upon a bond that has come due. *Compare United States v. American Motorists Ins. Co.*, 10 CIT 19, 1986 WL 8339 (1986); *United States v. Federal Ins. Co.*, 857 F.2d 1457 (Fed.Cir.1988). Moreover, since Commerce has not yet asked for payment from the importers, the bonds have not come due.

■ Finally, as for plaintiff's other argument, this court's powers in equity are

intended to enable it to give full effect to the requirements of justice. This tenet should not be misinterpreted to condone the circumvention of fundamental legal methods in order to achieve desired results.

### Conclusion

The Court, having visited the alternative theories urged by plaintiff, can find no basis in statute, legislative history, or caselaw to support plaintiff's position. Thus, bearing in mind the considerable deference afforded Commerce's interpretation of the statutes it administers, the Court adheres to the agency's construction of its statutory mandate. Accordingly, Commerce's decision not to impose interest in this case is hereby affirmed.