CANADIAN FUR TRAPPERS CORP., et al., Plaintiffs,

v.

UNITED STATES, Defendant.

Court Nos. 86–07–00977, 86–05–00641.

United States Court of International Trade.

July 8, 1988.

Siegel, Mandell & Davidson, Brian S. Goldstein and Judith M. Barzilay, New York City, for plaintiff-Canadian Fur Trappers Corp.

Mudge Rose Guthrie Alexander & Ferdon, Donald B. Cameron, Jr., Teresa M. Polino and David B. Meltzer, Washington, D.C., for plaintiff-Meldisco, A Div. of Melville Corp.

John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Dept., U.S. Dept. of Justice, Washington, D.C. (Velta A. Melnbrencis); New York City, of counsel: Paul C. Aiken, II, Attorney–Advisor, Office of the Deputy Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, D.C., Edward N. Maurer, Atty., Office of Asst.

Chief Counsel for International Trade Litigation, U.S. Customs Service, U.S. Dept. of Treasury, New York City, for defendant.

Collier, Shannon, Rill & Scott, Lauren R. Howard and Michael R. Kershow, Washington, D.C., for amicus curiae Footwear Industries of America, Inc.

## MEMORANDUM OPINION AND ORDER

TSOUCALAS, Judge:

This matter is before the Court to determine whether certain of plaintiffs' entries, subject to a countervailing duty order, were deemed liquidated by operation of law pursuant to 19 U.S.C. § 1504(d), and if not deemed liquidated, whether interest was properly assessed when Customs liquidated these entries.

## BACKGROUND

Plaintiffs' goods are subject to an outstanding countervailing duty order, T.D. 74–235. Therefore, plaintiffs deposited estimated countervailing duties upon the entry of its goods. Pursuant to § 751 of the Trade Agreements Act of 1979, Pub.L. 96–39, § 751, 93 Stat. 144, 175 (1979), 19 U.S.C. § 1675 (1982 and Supp. III 1985), Commerce undertook annual reviews of this order to ascertain the amount of countervailing duties to be assessed. Plaintiffs' entries during 1980–1982, the subject of this action, were included within the first and second annual reviews, respectively. Thus, liquidation of these entries were suspended pending a final determination in each annual review. In the final results of these reviews Commerce found that net subsidies existed, 48 Fed.Reg. 40,536–38 (Sept. 8, 1983); 49 Fed.Reg. 30,003–04 (July 25, 1984), which were greater than the rate of estimated countervailing duty paid by plaintiffs at the time of entry. Thus, upon liquidation of plaintiffs' entries, additional countervailing duties would be due.

Before the entries were liquidated, however, two actions were commenced in this court (challenging issues unrelated to this case) wherein liquidation of plaintiffs' mer-

chandise was enjoined pursuant to court order pending resolution of each action. *Volume Footwear Retailers of America v. United States*, Court No. 83–10–01500; *Volume Footwear Retailers of America v. United States*, Court No. 84–08–01083. After these actions were subsequently consolidated, they were thereafter dismissed on May 15, 1985, pursuant to a stipulation of dismissal consented to by all parties. *Volume Footwear Retailers of America v. United States*, Consolidated Court No. 83–10–01500. Five months later, the government moved to dissolve the injunctions. Originally, that motion was granted, nonetheless on January 3, 1986, after rehearing, the court vacated that order concluding that the preliminary injunctions actually dissolved on May 15, 1985 when the case was dismissed. *See Volume Footwear Retailers of America v. United States*, 10 CIT ——, Slip Op. 86–4 (January 9, 1986).

Thereafter, pursuant to instructions by Commerce, the Customs Service liquidated certain of the entries in issue on February 28, 1986, and others on March 31, 1986, which included the assessment of countervailing duties and interest. Plaintiffs commenced this action to challenge the validity of these liquidations. Presently before the Court are plaintiffs' and defendant's cross-motions for summary judgment on the issue of whether Customs' failure to liquidate these entries within 90 days of when the suspension of liquidation terminated on May 15, 1985, results in liquidation by operation of law under 19 U.S.C. § 1504, and whether interest was properly assessed under 19 U.S.C. § 1677g. If the merchandise was deemed liquidated, the additional countervailing duties determined to be due from the annual reviews of the countervailing duty order would not be assessed.

## DISCUSSION

■ In certain circumstances an entry will be deemed liquidated if Customs fails to liquidate within the prescribed time period. The time limits on liquidation are set forth in 19 U.S.C. § 1504 (1982 and Supp. III 1985), which provides in relevant part:

**(a) Liquidation.**—Except as provided in subsection (b) of this section, an entry of merchandise not liquidated within one year from:

(1) the date of entry of such merchandise;

. . . .

shall be deemed liquidated at the rate of duty value, quantity, and amount of duties asserted at the time of entry. . . .

**(b) Extension.**—The Secretary may extend the period in which to liquidate an entry . . . if—

(1) information needed for the proper appraisement or classification of the merchandise is not available to the appropriate customs officer;

(2) liquidation is suspended as required by statute or court order; or

(3) the importer . . . requests such extension and shows good cause therefor.

. . . .

**(d) Limitation.**—Any entry of merchandise not liquidated at the expiration of four years from the applicable date specified in subsection (a) of this section, shall be deemed liquidated at the rate of duty, value, quantity, and amount of duty asserted at the time of entry by the importer . . . unless liquidation continues to be suspended as required by statute or court order. *When such a suspension of liquidation is removed, the entry shall be liquidated within 90 days therefrom.* (Emphasis added).

The focus of this analysis is on § 1504(d), which generally, sets a four year limit on extensions of liquidation. Merchandise not liquidated by Customs within that time will be deemed liquidated at the amount of duty asserted at the time of entry in accordance with § 1504(a). The exception to this rule is when suspension continues to be required by statute or court order. Whereas administrative extensions in § 1504(b)(1) or (3) are not excepted from the four year limitation in subsection (d), a suspension of liquidation under § 1504(b)(2) may continue indefinitely if the court order or statute requires. *American Permac, Inc. v. United States*, 10 CIT ——, ——, 642 F.Supp.

1187, 1191 (1986). This action centers on what should occur once that suspension ceases. The Court must resolve whether the last sentence in § 1504(d) is mandatory, thereby imposing the consequence of deemed liquidation when Customs failed to liquidate the entry within 90 days of when the suspension was terminated on May 15, 1985; or whether the provision is directory only, so the failure to liquidate within 90 days does not divest Customs of its ability to take such action beyond the deadline.

Plaintiffs claim that the language used by Congress, to wit: "shall be liquidated within 90 days therefrom" clearly mandates that Customs act within that time frame. It has been recognized that use of the word "shall" normally connotes a command. *Escoe v. Zerbst,* 295 U.S. 490, 493, 55 S.Ct. 818, 819, 79 L.Ed. 1566 (1935). However, "[s]tatutes that, for guidance of a governmental official's discharge of duties, propose 'to secure order, system, and dispatch in proceedings' are usually construed as directory, whether or not worded in the imperative, ... especially when the alternative is harshness or absurdity." *Ralpho v. Bell,* 569 F.2d 607, 627 (D.C.Cir.1977) (footnote omitted).

"It is settled that '[a] statutory time period is not mandatory unless it both expressly requires an agency or public official to act within a particular time period *and specifies a consequence for failure to comply with the provisions'* (emphasis added)." *Alberta Gas Chemicals, Inc. v. United States,* 1 CIT 312, 315–16, 515 F.Supp. 780, 785 (1981) (citations omitted). Statutory deadlines are usually directory and not mandatory when "no restraint is affirmatively imposed on the doing of the act after the time specified and no adverse consequences are imposed for the delay." *Philipp Bros., Inc. v. United States,* 10 CIT ——, ——, 630 F.Supp. 1317, 1323 (1986).

Defendant argues that there are no adverse consequences imposed by the last sentence in § 1504(d) if Customs fails to liquidate within 90 days and therefore the provision is directory. In opposition, plaintiffs argue it would be redundant to reiterate the consequence of deemed liquidation previously set forth in § 1504; and further contend that defendant's interpretation is inconsistent with *Pagoda Trading Corp. v. United States,* 804 F.2d 665 (Fed. Cir.1986).

In *Pagoda,* liquidation of the entries, subject to a countervailing duty order, was initially suspended. However, within one year of the date of entry, the countervailing duty order was revoked and Customs was directed to proceed with liquidation. Thus, there was no longer a "valid basis for suspension of liquidation 'as required by statute or court order'" under § 1504(b)(2). *Id.* at 669. In the absence of this suspension or an extension under § 1504(b)(1) or (3), the merchandise was deemed liquidated under 19 U.S.C. § 1504(a) when Customs failed to liquidate within one year of entry. *Id.*

The parties disagree as to whether *Pagoda* is applicable to § 1504(d) (where the suspension extends the time for liquidation beyond four years), so that once the extension authorized in subsection (b)(2) expires because the suspension was lifted, subsection (a) then operates to impose deemed liquidation. Defendant maintains *Pagoda* only addressed § 1504(a) and is thus distinguishable. In defendant's view, once subsection (b)(2) extends the time for liquidation beyond one year, only subsection (d) governs the time limits for liquidation, and the entries are never again subject to subsection (a).

The overall purpose of § 1504 was to secure a time frame for liquidation. It was intended to ameliorate situations where importers and others with a potential liability relating to customs transactions learned years after importation that additional duties were owing on that entry, or where long delays could reduce their chances of recovering a refund for any overpayment in estimated duties. S.Rep. No. 95–778, 95th Cong., 2nd Sess. 32 (1978), *reprinted in* 1978 U.S.Code of Cong. & Admin.News 2211, 2243.

In analyzing the structure of § 1504, it is relevant to note Congress' failure to include deemed liquidation in the latter part

of subsection (d) where it appeared in previous sections of § 1504(a) and (d). The omission of a particular provision in one section previously mentioned in the same statute is not deemed to be inadvertent. *Cf. United States Steel Corp. v. United States,* 9 CIT 453, 456, 618 F.Supp. 496, 499–500 (1985) (quoting *Kentucky ex rel. Hancock v. Ruckelshaus,* 362 F.Supp. 360, 365 (W.D.Ky.1973), *aff'd,* 497 F.2d 1172 (6th Cir.1974), *aff'd sub nom., Hancock v. Train,* 426 U.S. 167, 96 S.Ct. 2006, 48 L.Ed.2d 555 (1976)).

In reference to the 90 day time frame in the last part of § 1504(d), legislative history indicates, as disclosed in the House report that "[t]his last provision is discretionary, rather than mandatory, and recognizes that there will be instances when it may be impossible to complete liquidation within 90 days because of the sheer number of entries to be liquidated after a long-continued suspension." H.R.Rep. No. 95–621, 95th Cong., 1st Sess. 26 (1977).

A clear statement in the committee report responsible for drafting a proposed statute is reliable evidence of congressional intent where that congressional statement is not contrary to other sources of legislative history or the clearly expressed language in the statute. *Cf. Miller v. Federal Mine Safety & Health Review Comm'n,* 687 F.2d 194, 195 (7th Cir.1982); *Council of Hawaii Hotels v. Agsalud,* 594 F.Supp. 449, 454 (D.Haw.1984). The Court declines to ignore this source of legislative history, contrary to plaintiffs' suggestion, finding it is not inconsistent with either the statutory language or other congressional statements. As demonstrated by caselaw, use of the word "shall" does not clearly command the agency, and an absence of a discussion on this provision in the Senate and Conference Committee reports does not substantiate that a lack of agreement with the House interpretation exists.

Yet plaintiffs highlight that once Customs was notified that the process of liquidation could commence, liquidation of the entries was in fact completed within 90 days therefrom; thus, the House sentiment on the 90 day provision has no relevance in this instance. Plaintiffs allege the real controversy is Commerce's failure to promptly notify Customs that it should proceed with liquidation. Indeed, defendant does not offer any explanation as to why its directions to Customs were not expeditiously issued. Nor is there any discernible reason why, if the government was unclear as to whether the injunction against liquidation in the *Volume Footwear* case survived dismissal of the action, it delayed five months therefrom to bring on a motion to clarify the issue. Therefore, it is troublesome that this provision, which was intended to afford latitude to Customs in complicated liquidations, has the potential for abuse when Commerce invokes its protection to justify the agency's own lack of diligence.

There is no dispute that the goal of § 1504 was to eliminate uncertainty as to what further exactions or refunds were due on an import transaction. *Ambassador Division of Florsheim Shoe v. United States* (Florsheim), 3 Fed.Cir. (T) 28, 30–31, 748 F.2d 1560, 1562–63 (Fed.Cir.1984); *see* H.R.Rep. No. 95–621, 95th Cong., 1st Sess. 26 (1977). Plaintiffs' interpretation of the 90 day phrase would certainly be consistent with this purpose. According to defendant, the uncertainty previously attendant to unduly delayed liquidations is not present here since the final results of the review were published, plaintiffs are now aware of the additional duties which will be assessed at liquidation. Defendant thus characterizes plaintiffs' interpretation as a means to avoid collection of countervailing duties, which would frustrate the remedial purpose of the countervailing duty laws. *Cf. Asahi Chemical Industry Co., Ltd. v. United States,* 4 CIT 120, 125, 548 F.Supp. 1261, 1265 (1982).

Indeed, in other contexts involving countervailing and antidumping duty law, it has been held that Commerce's failure to comply with the statutory deadlines (for the completion of administrative reviews under 19 U.S.C. § 1675) did not result in deemed liquidation under § 1504. *American Permac,* 10 CIT at ——, 642 F.Supp. 1194–95; *Philipp Bros.,* 10 CIT ——, 630 F.Supp. at 1324. Further, our appellate court has

held that these statutes were enacted as in *pari materia* "and therefore a legislative intent to have them work harmoniously together, and for neither to frustrate the other, or partially repeal it, is very much to be inferred." *Florsheim*, 3 Fed.Cir. (T) at 34, 748 F.2d at 1565. Plaintiffs stress this Court's interpretation of § 1504(d) carries ramifications not only in the countervailing duty realm, but in all cases involving liquidation and a determination that the 90 day provision is directory, would restore to Customs discretion to extend liquidation indefinitely, a situation § 1504 was designed to eliminate.

The Court has carefully weighed all the policy arguments advanced by the parties including the concern raised by defendant that if deemed liquidation has resulted as a consequence of Custom's failure to liquidate within 90 days of the termination of suspension, then importers who have deposited estimated duties greater than the amount that they actually owe will be unjustly affected by this outcome, as they will not be entitled to a refund. Nonetheless, it is the statutory language and structure which compels the conclusion that the provision is directory. Whereas deemed liquidation is expressly made applicable to entries which have not been liquidated within a certain time, that consequence is notably absent in reference to liquidations which have been suspended by court order or statute beyond the four year time limit. Further, the only relevant statement in the legislative history supports this interpretation.

If the legislative history and congressional design of a statute do not convincingly indicate that a deadline was intended to be jurisdictional when the imperative "shall" was used, the Court cannot draw that conclusion. *Ralpho v. Bell*, 569 F.2d at 627–28; *Alberta Gas Chemicals*, 1 CIT at 317, 515 F.Supp. at 786. Although the Court is not impressed with the government's actions which gave rise to this controversy, that lack of diligence in this matter cannot control the decision on whether the provision in § 1504(d) is mandatory or directory. Analysis of the caselaw, the statute, and legislative history does not convincingly indicate that this provision was intended to be jurisdictional. Therefore, the merchandise was not deemed liquidated on August 15, 1985, and Customs' liquidation was not invalid.

Plaintiffs thus contest the imposition of interest on the difference between the amount of duties they deposited at entry and the countervailing duties actually assessed as a result of the administrative reviews. Prior to 1980, "if the security posted to cover the estimated liability for countervailing duties [was] different from the actual duty imposed, the difference [was] refunded or collected, as the case may be, without interest." S.Rep. No. 96–249, 96th Cong., 1st Sess. 59, *reprinted in* 1979 U.S.Code Cong. & Admin.News 381, 445.

However, by virtue of the Trade Agreements Act of 1979 (hereinafter "1979 Act"), title 19 was amended to reflect new provisions addressing the treatment of the difference between estimated duties and final assessed duties. Under 19 U.S.C. § 1671e(a)(3) (1982) (renumbered as § 1671e(a)(4) (Supp. III 1985)), once a countervailing duty order is issued, estimated duties are required to be deposited on all future entries based on those results. As 19 U.S.C. § 1671f(b) (1982) provides, any difference between the amount deposited pursuant to § 1671e(a)(3) and the amount ultimately assessed as countervailing duties (as a result of the annual review, under § 751 of the 1979 Act, 19 U.S.C. § 1675), would be refunded or collected together with interest in accordance with § 1677g.

Pursuant to 19 U.S.C. § 1677g (1982), interest is to be imposed on any underpayment or overpayment of estimated duties deposited for merchandise entered for consumption *on or after publication of the final injury determination by the International Trade Commission* (ITC). The interest rate would either be 8% per annum, or the interest rate in effect under 26 U.S.C. § 6621 on the date the amount of duty is finally determined, whichever is higher.

Plaintiffs contend that §§ 1671f(b) and 1677g, as added by the 1979 Act, are not applicable to their deposits. Plaintiffs reason that these deposits were made for entries subject to an order under the "old" countervailing duty laws, *i.e.*, an order issued before the 1979 Act, and there is no indication that Congress intended to assess interest on deposits for entries under "old" countervailing duty orders.

Prior to 1979, the statute governing the imposition of countervailing duties was 19 U.S.C. § 1303. Plaintiffs' merchandise entered subject to a 1974 countervailing duty order issued under § 1303. Under this provision, no injury determination by the ITC was required for the imposition of countervailing duties, except where required by international obligations in the case of duty-free goods. However, the 1979 Act enacted a new set of laws for the imposition of countervailing duties, codified at 19 U.S.C. § 1671, *et seq.* (1982). Pursuant to 19 U.S.C. § 1671(a)(2) an injury determination is now required for countries "under the Agreement"[1] before countervailing duties may be imposed. Nevertheless, the 1979 Act did not repeal § 1303, rather it was retained for certain situations and amended.

Congress indicated that § 1303, as amended, would continue to apply with respect to articles not subject to the new § 1671. Specifically, § 1303, as amended, applies to countries not under the Agreement, as well as to any outstanding countervailing duty order issued under the old § 1303, which was still in effect on the date the 1979 Act became effective. Pub.L. 96–39 §§ 103 and 104(c), 93 Stat. at 190–92; S.Rep. No. 96–249 at 43–44, 103, *reprinted in* 1979 U.S.Code Cong. & Admin.News at 429–30, 489. The countervailing duty order in this case is within this latter category.

The amendment to § 1303 reflects a new subsection (b):

(b) The duty imposed under subsection (a) of this section shall be imposed, under regulations prescribed by the administer-

ing authority (as defined in section 1677(1) of this title), in accordance with subtitle IV of this chapter (relating to the imposition of countervailing duties) except that, in the case of any imported article or merchandise which is not free of duty—

(1) no determination by the United States International Trade Commission under section 1671b(a), 1671c, or 1671d(b) of this title shall be required,

. . . .

(4) any reference to determinations by the Commission ... which are not permitted or required by this subsection shall be disregarded.

19 U.S.C. § 1303 (1982).

Although plaintiffs claim that the provisions for interest enacted in 1979 are not applicable to entries pursuant to a pre–1979 order, the congressional action, reflected in the statute and the legislative history, do not support such a conclusion. First, by virtue of § 1303(b), as amended, Congress intended that any countervailing duties imposed under § 1303 be in accordance with the new law on countervailing duties under 19 U.S.C. § 1671, *et seq.* except to the extent that an injury determination is required. S.Rep. No. 96–249 at 103, *reprinted in* 1979 U.S.Code Cong. & Admin.News at 489; *see generally, Cementos Anahuac del Golfo, S.A. v. United States,* 12 CIT ——, 689 F.Supp. 1191 (1988), *appeal docketed* No. 88–1476 (Fed.Cir. June 29, 1988). Congress explicitly made the provisions of 19 U.S.C. § 1671, *et seq.* applicable to § 1303 actions:

The committee believes the procedures and standards under [the] new title [on countervailing duties] are a significant improvement over existing law and practice and should be applied to section [1]303. Obviously, all references to injury and all determinations relating to injury under [this] title are irrelevant to proceedings under section [1]303 which do not require an injury determination.

---

**1.** "Under the Agreement" refers to the obligations imposed in the Agreement of Interpretation and Application of Articles VI, XVI, and XXIII (Subsidies Code) of the General Agreement on Tariffs and Trade (GATT).

*Id.* at 104, *reprinted in* 1979 U.S.Code Cong. & Admin.News at 490. Second, the order governing plaintiffs' entries was issued pursuant to § 1303. This order was outstanding when the 1979 Act came into effect, and thus, pursuant to § 1303, as amended, the revised procedures of the new countervailing duty law were applicable to this order. Third, in § 1303(b) Congress specifically excepted those provisions of the new law in the 1979 Act which would not be applicable to § 1303 proceedings. The interest provision was not an enumerated exception. *See* 19 U.S.C. § 1303(b). Fourth, plaintiffs' goods entered the country after the effective date of the 1979 Act, therefore, the deposits made on these entries, although necessitated by the existence of an "old" order, were required pursuant to the new countervailing duty law.

Alternatively, plaintiffs argue that if § 1677g can be applied to a 1974 order, then liability for interest does not accrue until deposits are made pursuant to the results of the first § 751 review, 19 U.S.C. § 1675. As plaintiffs contend, only entries covered by an *order issued under the 1979 Act* are subject to the interest provisions.[2] Since the § 751 review is the first time the provisions of the 1979 Act are made applicable to pre–1979 outstanding orders, that determination is the first order under the 1979 Act. Plaintiffs draw this conclusion by reference to the transitional rules of the 1979 Act, which provide that any countervailing duty order outstanding on the effective date of the 1979 Act "shall remain in effect [thereafter] and shall be subject to review under § 751 of the Tariff Act of 1930 [19 U.S.C. § 1675]." Pub.L. 96–39, § 104(c), 93 Stat. at 192.

This argument has a certain amount of appeal but fails to recognize that the deposits herein were made on entries after the effective date of the 1979 Act, and therefore § 1303, as amended, was in effect as well as the interest provision in § 1677g, before the goods entered. Consequently, when the goods entered the country, the old order was governed by the new countervailing duty law, requiring deposits for those entries and imposing interest for any under or overpayment. There is no reason to conclude that interest arises only for entries after the date of the § 751 review. Even though plaintiffs are correct in characterizing this as the first determination under the 1979 Act, the key aspect of the § 751 determination is not only to set the deposit rate for future entries, but mainly to serve as the rate of assessment of duties for entries during the period under review. *Florsheim,* 3 Fed.Cir. (T) at 34, 748 F.2d at 1565. Plaintiffs cannot deny that those results will necessarily determine whether there was an under or overpayment in deposits, and consequently whether interest is assessable for entries subject to the review determination.

However, 19 U.S.C. § 1677g makes interest payable only in reference to deposits on entries after an injury determination by the ITC, which plaintiffs stress indicates a congressional intent that interest not be applied to pre–1979 orders because no injury determination is required under 19 U.S.C. § 1303, as amended. Nevertheless, 19 U.S.C. § 1303(b), as amended, dictates that when an injury determination is not required by the statute, any reference to injury is to be disregarded.

In *Hide–Away Creations, Ltd. v. United States,* 8 CIT 286, 598 F.Supp. 395 (1984), a somewhat analogous situation was presented. Therein, the countervailing duty order was issued after the 1979 Act, but pursuant to 19 U.S.C. § 1303, as amended, because it covered a country not under the Agreement. The importer was entitled to a refund because the deposits of estimated duties made pursuant to the preliminary results in the *initial investigation* were less than the amount determined to be assessable in the § 751 review results. The court's analysis revealed that, aside from the injury determination, there was no "relevant difference in the applicable procedures" in §§ 1303 and 1671, *et seq. Id.* at 291, 598 F.Supp. at 399. This conclusion

---

**2.** No deposits were required on merchandise entered after the first review determination because the countervailing duty order was subsequently revoked, effective for all entries after May 3, 1982.

was warranted since § 1303(b) both references the procedures in § 1671, *et seq.*, and dictates that any reference to an injury determination not required be disregarded. *Id.*[3] "[H]ence the provisions of 19 U.S.C. § 1677g concerning interest on overpayments (and the collection of interest on underpayments) of estimated countervailing duties are also applicable to deposits of estimated countervailing duties imposed under section 1303." *Id.*

As noted in *Hide–Away,* when reference to the injury determination in 19 U.S.C. § 1677g is omitted, the statute does not provide a time frame prescribing which entries would be eligible for interest under § 1303. In extrapolating what Congress intended in this situation, the court observed that Congress had specified entries after an injury determination to be eligible for interest, because the injury determination was the benchmark for fixing an importer's liability for countervailing duties. Thus, an analogous point in the § 1303 proceeding was the final affirmative countervailing duty determination; therefore, interest was payable in connection with deposits on entries on or after that date. *Id.* at 292–93, 598 F.Supp. at 400–01.

Application of *Hide–Away* to the present case certainly mandates the conclusion that interest is due on the entries herein because the merchandise entered after a final affirmative determination and countervailing duty order were issued, as well as after the interest provision was in effect. Liability for depositing countervailing duties had already been established. Plaintiffs seek to distinguish *Hide–Away* because the order therein was issued pursuant to the 1979 countervailing duty law. However, the cases are similar in that both orders were subject to § 1303, as amended; in both instances deposits were made on entries after the 1979 Act; and both proceedings did not necessitate an injury determination. The Court cannot discern any practical reason why the rationale employed in *Hide–Away* should not be applied to other § 1303 proceedings.

Finally, 19 U.S.C. § 1677g was further amended by § 621 of the Trade and Tariff Act of 1984, Pub.L. 98–573, § 621, 98 Stat. 2948, 3039 (1984). Now, deposits on merchandise entered after the publication of a countervailing duty *order,* rather than publication of the ITC *injury determination,* will be subject to interest assessment for any under or overpayment. The method of calculating interest was also amended, omitting reference to the 8% rate, and establishing the rate of interest *for any period of time* to be the rate set forth under 26 U.S.C. § 6621. 19 U.S.C. § 1677g (Supp. III 1985). Commerce and Customs have interpreted this revision as requiring the weighted average rate compounded daily for entries liquidated after October 30, 1984. 50 Fed.Reg. 21,832 (May 29, 1985).[4]

This particular amendment was to take effect on the effective date of the 1984 Act which was October 30, 1984. Pub.L. 98–573, § 626, 98 Stat. at 3042. These entries were made before this amendment but liquidated after the act became effective, thus it is disputed which interest provision applies.

The Court finds that the 1984 amendment cannot be applied for interest accruing before the effective date of that amendment. Prior to the amendment, the date when an importer's liability for interest was defined was the date of the final determination in the § 751 review (when coun-

---

**3.** Originally, the court held that § 1677g was inapplicable since no injury determination was required because the country involved was not a signatory to the agreement, then "an operative circumstance or prerequisite for the payment of interest under 19 U.S.C. § 1677g—*viz,* notice of an affirmative injury determination ... did not, and could not, occur." 8 CIT at 289, 598 F.Supp. at 397. However, after rehearing, the court reversed that decision.

**4.** Under 26 U.S.C. § 6622, any interest calculated by reference to § 6621 is to be compounded daily, effective for interest accruing after December 31, 1982 (pursuant to the effective date of 26 U.S.C. § 6622). Although § 6622 was in effect prior to the 1984 amendment to 19 U.S.C. § 1677g, for entries liquidated before 1984 Customs' policy was to use simple interest. *Defendant's Cross–Motion for Summary Judgment,* Declaration of Robert B. Hamilton, Jr.

tervailing duties were assessed),[5] irrespective of when liquidation occurred. Since this determination was issued before the 1984 amendment, the interest provision in 19 U.S.C. § 1677g as provided in the 1979 Act is applicable for interest accruing before the effective date of the 1984 Act. However, the Court can find no reason that the 1984 amendment should not apply for interest accruing subsequent to that date. Upon entry of goods subject to a countervailing duty order, an importer was not guaranteed that a certain rate would be in effect. This amendment, which was effective prior to liquidation, did not change the amount subject to interest, but merely changed the method for ascertaining the interest rate, to more accurately reflect the cost of an outstanding debt.

## CONCLUSION

The merchandise was not liquidated by operation of law under 19 U.S.C. § 1504(d). Section 1504 provides, when certain time limits are exceeded, deemed liquidation will result. However, when Congress provided that entries shall be liquidated within 90 days after the termination of a suspension, the consequence of deemed liquidation was not specified. Further, these entries were eligible for the imposition of interest on the shortfall between the amount of countervailing duties deposited and the amount assessed. As provided in the 1979 Act, the provisions in 19 U.S.C. § 1677g (1982) apply to interest accruing up until the 1984 amendment to this section. For interest accruing after the effective date of that amendment, interest shall be calculated according to the provisions in the 1984 Act, 19 U.S.C. § 1677g (Supp. III 1985). So ordered.

## JUDGMENT

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED: that plaintiffs'

motion for summary judgment is denied as to the deemed liquidation claim; defendant's cross-motion for summary judgment is granted as to this issue, and the claim is therefore dismissed. It is further

ORDERED, ADJUDGED, and DECREED: that plaintiffs' motion for summary judgment is granted in part, to the extent that the proper rate for interest, which accrued on or before October 30, 1984, is the rate established under 19 U.S.C. § 1677g (1982); defendant's cross-motion for summary judgment is denied as to this issue. It is further

ORDERED, ADJUDGED, and DECREED: that plaintiffs' motion for summary judgment is denied to the extent that interest accruing after October 30, 1984 is properly assessed pursuant to 19 U.S.C. § 1677g (Supp. III 1985); defendant's cross-motion for summary judgment is granted as to this issue. It is further

ORDERED, ADJUDGED, and DECREED: that the United States Customs Service shall recalculate the interest on the subject entries on the basis of 19 U.S.C. § 1677g (1982) for interest accruing on and up until October 30, 1984, and on the basis of 19 U.S.C. § 1677g (Supp. III 1985) for interest accruing after that date, and refund any overpayment.

---

**5.** It is undisputed that the rate in effect under 26 U.S.C. § 6621 for all relevant times under consideration was always higher than the 8% referred to in 19 U.S.C. § 1677g (1982).