**KEMIRA FIBRES OY, Plaintiff,**

v.

**UNITED STATES, et al., Defendants.**

Slip Op. 94–120.
Court No. 94–07–00405.

United States Court of
International Trade.

July 26, 1994.

tion with the antidumping finding ("Finding") issued in *Viscose Rayon Staple Fiber From Finland,* 44 Fed.Reg. 17,156 (1979). Plaintiff seeks this relief pending the entry of final judgment on its request for a permanent injunction and declaratory judgment. The Court granted plaintiff's motion for a TRO on July 13, 1994, and scheduled a hearing on plaintiff's motion for a preliminary injunction. Subsequently, on July 19, 1994, a full hearing was held to determine whether a preliminary injunction should issue.

Kemira Fibres Oy is the corporate successor to Kemira Oy Sateri, the respondent in the original antidumping investigation from which an antidumping duty order ("Order") issued. The domestic party who petitioned for the administrative review which resulted in the 1979 Finding is no longer in existence. Lenzing Fibers Corporation ("Lenzing") and Courtaulds Fiber Inc. ("Courtaulds"), two parties currently interested in maintaining the Order, and who, to facilitate that result, have petitioned Commerce for an administrative review, are new entrants to the fiber industry.

Arent Fox Kintner Plotkin & Kahn, James H. Hulme and Christine L. Herrell, Washington, DC, for plaintiff.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Velta A. Melnbrencis, Asst. Dir., and Dean L. Grayson, Washington, DC (Anna Y.M. Park, Attorney–Advisor, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, of counsel), for defendants.

**OPINION**

TSOUCALAS, Judge:

Pursuant to Rule 65(a) of the Rules of this Court, Kemira Fibres Oy ("Kemira") filed a motion requesting that this court grant a temporary restraining order ("TRO") and a preliminary injunction enjoining the Department of Commerce, International Trade Administration ("Commerce"), from conducting an administrative review of viscose rayon staple fiber ("fiber") exported from Finland by Kemira for the period 1993–94, in connec-

*Background*

On March 21, 1979, the United States Treasury Department issued a finding of dumping with respect to the fiber. *Viscose Rayon Staple Fiber From Finland,* 44 Fed. Reg. 17,156. Kemira Oy Sateri, the only known exporter of the fiber from Finland to the United States, was the sole respondent.

Effective January 2, 1980, authority for administering the antidumping law was transferred from the Treasury Department to the United States Department of Commerce. Commerce conducted administrative reviews of the fiber until 1988. It received no requests for an administrative review during the anniversary month in 1989, 1990, 1991, and 1992 and, consequently, conducted no reviews through February, 1992.

On March 12, 1993, Commerce published a notice offering interested parties an opportunity to request an administrative review of the fiber for the period March 1, 1992, through February 28, 1993. *Antidumping or Countervailing Duty Order, Finding, or*

*Suspended Investigation; Opportunity to Request Administrative Review,* 58 Fed.Reg. 13,583 (1993). Commerce received no requests for an administrative review by the last day of the anniversary month in March 1993.

On June 3, 1993, Commerce published a notice of its intent to revoke the Finding on the fiber. *Rayon Staple Fiber From Finland; Intent to Revoke Antidumping Finding,* 58 Fed.Reg. 31,504. The notice stated, "if no domestic interested party objects to this intent to revoke within 30 days from June 3, 1993, [Commerce] shall conclude that the finding is no longer of interest to interested parties and shall proceed with revocation." *Id.* at 31,505.

By letter, dated June 28, 1993, Lenzing and Courtaulds, the only two U.S. domestic producers of rayon staple fiber, responding to the June 3, 1993 notice, objected to the proposed revocation.

On March 4, 1994, Commerce published a notice offering interested parties an opportunity to request an administrative review of the fiber for the period March 1, 1993, through February 28, 1994. *Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review,* 59 Fed.Reg. 10,368 (1994). In response to the March 4, 1994 notice, on March 29, 1994—within the anniversary month of the dumping Finding, Lenzing and Courtaulds requested that Commerce conduct an administrative review with respect to Kemira's imports.

On March 29, 1994, Commerce published a notice of its intent to revoke the dumping Finding and the Order on the fiber, *Intent to Revoke Antidumping Duty Orders and Findings,* 59 Fed.Reg. 14,608 (1994). In re-sponse, on April 11, 1994, Lenzing and Courtaulds objected to the proposed revocation.

For the purpose of conducting an administrative review, on April 21, 1994, Commerce sent Kemira a questionnaire; the response due date was June 6, 1994. On May 25, 1994, Kemira requested an extension of time to submit its response; the request was granted and the new response due date was June 28, 1994.

On May 12, 1994, Commerce published a notice of its intent to initiate an administrative review of the fiber for the period March 1, 1993, through February 28, 1994. *Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 59 Fed.Reg. 24,683 (1994).

On June 23, 1994, Kemira protested Commerce's decision to initiate this review and, concurrently, requested another extension of time to file its questionnaire response. An extension of time was granted; the new response date was July 13, 1994.

On July 13, 1994, Kemira submitted its questionnaire response. Subsequently, also on July 13, 1994, Kemira withdrew its questionnaire response and filed a motion for a TRO and a preliminary injunction pending resolution of litigation with respect to Commerce's failure to revoke the 1979 Finding and Order on the fiber.

### Discussion

Kemira carries the burden of demonstrating that the Court of International Trade has jurisdiction to rule on plaintiff's claim. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Smith Corona Group, SCM Corp. v. United States,* 8 CIT 100, 102, 593 F.Supp. 415, 417–18 (1984). Plaintiff argues that the court has jurisdiction pursuant to 28 U.S.C. § 1581(i) (1988).[1]

---

**1.** Section 1581(i) states, in part, as follows:

(i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

(1) revenue from imports or tonnage;

(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

(4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

28 U.S.C. § 1581(i) (1988).

Kemira claims jurisdiction under subparagraphs (1), (2) and (4) of this provision. This "residual" jurisdiction provision grants exclusive jurisdiction to the Court of International Trade concerning issues relating to the antidumping duty law which are not specifically covered by other subparagraphs of section 1581. Plaintiff contends that review under other subparagraphs of section 1581 would be manifestly inadequate as participation in an administrative review will cause it irreparable harm.

Defendant maintains that plaintiff has an adequate remedy under 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a.[2] That is, defendant contends that if plaintiff waits until the conclusion of the 1993–94 administrative review before seeking judicial review and any injunctions that may be appropriate, plaintiff may proceed under 19 U.S.C. § 1516a(c)(2) to prevent the assessment of duties on entries covered by the administrative review. In the interim, defendant states that, liquidation of plaintiff's entries will be suspended.

Section 1581(i) may be invoked as a basis for subject matter jurisdiction where another subsection of § 1581 is unavailable or when the remedy provided by the other subsection would be "manifestly inadequate." *See Asociacion Colombiana de Exportadores de Flores (Asocoflores) v. United States*, 13 CIT 584, 717 F.Supp. 847 (1989), *aff'd*, 903 F.2d 1555 (Fed.Cir.1990). *See also Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed.Cir. 1987), *cert. denied*, 484 U.S. 1041, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988). In *Asocoflores*, the court found jurisdiction under § 1581(i) where plaintiff sought to enjoin Commerce from conducting an allegedly unlawful administrative review and argued that Commerce had acted in contradiction to its own regula-

tions when it initiated the review. In that case, plaintiffs alleged hardship in expending time, effort and money to participate in the review. The court found that the remedy afforded pursuant to § 1581(c), after a final determination was manifestly inadequate because, upon conclusion of the review, plaintiffs' challenge would be moot. *Asocoflores*, 13 CIT at 586–87, 717 F.Supp. at 850. This action is similar to the one that confronted the court in the *Asocoflores* case, in that, Kemira challenges the legality of the proposed administrative review and seeks relief from the requirement of participating in a review which it deems improper according to Commerce's own regulations. Further, in this action plaintiff has objections grounded in due process. Moreover, this dispute does not concern the matter of which rates will ultimately apply to plaintiff's fiber, but rather, concerns the question of whether plaintiff must participate in a review of its fiber exports at all. Given the clear showing in this case that such a review is not appropriate, this is not an insubstantial concern.

Therefore, the Court finds that jurisdiction exists pursuant to 28 U.S.C. § 1581(i).

*Plaintiff's Motion for Preliminary Injunctive Relief*

Having determined that the court possesses jurisdiction pursuant to section 1581(i), the Court addresses plaintiff's motion for injunctive relief. In order for a preliminary injunction to issue, plaintiff must demonstrate: (1) that it has a likelihood of success on the merits; (2) that there is a threat of immediate and irreparable harm to plaintiff if relief is not granted; (3) that the balance of the hardships to the parties favors issuance of the preliminary injunction; and (4) that the public interest would be better served by a

---

**2.** Pursuant to 28 U.S.C. § 1581(c), this court has jurisdiction over all actions commenced under section 516A of the Tariff Act of 1930. Section 516A of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a provides, in part, as follows:

**§ 1516a. Judicial review in countervailing duty and antidumping duty proceedings**

. . . .

**(c) Liquidation of entries**

. . . .

**(2) Injunctive relief**

In the case of a determination described in paragraph (2) of subsection (a) of this section

by the Secretary, the administering authority, or the Commission, the United States Court of International trade may enjoin the liquidation of some or all entries of merchandise covered by a determination of the Secretary, the administering authority, or the Commission, upon a request by an interested party for such relief and a proper showing that the requested relief should be granted under the circumstances.

19 U.S.C. § 1516a (1988).

grant of the relief requested. *Zenith Radio Corp. v. United States,* 710 F.2d 806, 809 (Fed.Cir.1983); *Timken Co. v. United States,* 11 CIT 504, 506, 666 F.Supp. 1558, 1559 (1987). "If any one of the requisite factors has not been established by plaintiff[ ], the motion for a preliminary injunction must be denied." *Trent Tube Div., Crucible Materials Corp. v. United States,* 14 CIT 587, 588, 744 F.Supp. 1177, 1179 (1990) *citing S.J. Stile Assocs. Ltd. v. Snyder,* 68 CCPA 27, 30, C.A.D. 1261, 646 F.2d 522, 525 (1981); *Budd Co., Wheel and Brake Div. v. United States,* 12 CIT 1020, 1022, 700 F.Supp. 35, 37 (1988).

### A. *Likelihood of Success on the Merits*

█ Kemira claims that, as a matter of law, Commerce is barred from proceeding with an administrative review on two grounds. First, plaintiff asserts that Commerce is without jurisdiction to proceed with a review because, as of April 1, 1993, Commerce was required to revoke the Finding on the fiber, pursuant to 19 C.F.R. § 353.-25(d)(4)(i), (ii) and (iii) (1993). Second, plaintiff asserts that Lenzing's and Courtaulds' June 28, 1993 objection to the proposed revocation of the Finding was not timely as Commerce was precluded from accepting it because it was not filed or served on plaintiff as required by 19 C.F.R. § 353.31(g) (1993).

Defendant admits that, on March 12, 1993, it published a notice inviting requests for an administrative review for the period 1992–93 and that no requests ensued. Defendant contends that, due to a backlog of cases, Commerce was unable, on March 1, 1993, to publish a notice of its intent to revoke the Finding and that, consequently, it published the notice on June 3, 1993. Commerce maintains that Lenzing's and Courtaulds' June 23, 1993 objection to the proposed revocation was timely and that these interested parties subsequently timely requested an administrative review.

Defendant states that, as it had not revoked the Finding, on March 4, 1994, it invited requests for an administrative review for 1993–94. Commerce maintains that, since Lenzing and Courtaulds timely requested an administrative review in response to the March 4, 1994 notice, it properly initiated an administrative review and proceeded to conduct it pursuant to 19 U.S.C. § 1675(a) (1988) and 19 C.F.R. § 353.22(c) (1993).

Commerce argues that the regulation that plaintiff relies upon requires Commerce to proceed with revocation of the Finding only in the event that no interested party has objected to the proposed revocation. Commerce contends that, as there was objection, it was not at liberty to revoke the Finding.

Additionally, Commerce contends that Lenzing's and Courtaulds' failure to serve plaintiff with their objection to the proposed revocation of the Finding is a harmless error which did not adversely affect plaintiff.

Commerce argues that it has broad discretion in determining whether to revoke an outstanding dumping finding. Commerce relies on *Philipp Bros. v. United States,* 10 CIT 76, 630 F.Supp. 1317 (1986), and other cases for the proposition that statutory time limits on administrative acts are directory, rather than mandatory, where the statute does not specify adverse consequences for the agency's failure to meet the time limit.

The gravamen of plaintiff's argument is that Commerce's own regulation mandates revocation of the Finding.[3] Plaintiff's argument has merit.

---

3. § 353.25 **Revocation of orders; termination of suspended investigation.**

(d) *Revocation or termination based on changed circumstances....*

(4)(i) *If for four consecutive annual anniversary months* no interested party has requested an administrative review, under § 353.22(a), of an order or suspended investigation, not later than the first day of the fifth consecutive annual anniversary month, the Secretary will publish in the FEDERAL REGISTER notice of "Intent to Revoke Order" or, if appropriate, "Intent to Terminate Suspended Investigation."

(ii) Not later than the date of publication of the notice described in paragraph (d)(4)(i) of this section, the Secretary will serve written notice of the intent to revoke or terminate on each interested party listed on the Department's service list and on any other person which the Secretary has reason to believe is a producer or seller in the United States of the like product.

(iii) *If by the last day of the fifth annual anniversary month* no interested party objects, or requests an administrative review under § 353.22(a), *the Secretary at that time will con-*

234

Section 353.25(d)(4)(i) clearly requires that Commerce will publish a notice of its intent to revoke an antidumping order not later than the first day of the fifth consecutive annual anniversary month if no interested party has requested an administrative review. In the case at bar, Commerce admits that it did not publish such a notice on March 1, 1993, the relevant date when a notice was required to have been published. Further, Commerce admits that no interested party objected to revocation of the Order *or* requested an administrative review by March 31, 1993. *See* 19 C.F.R. § 353.25(d)(4)(iii) (1993). Hence, as the language in Commerce's own regulation is mandatory rather than directory, on April 1, 1993, Commerce was obliged to revoke the outstanding Order on fiber. "It is settled that '[a] statutory time period is not mandatory unless it both expressly requires an agency or public official to act within a particular time period *and specifies a consequence for failure to comply with the provisions'*." *Canadian Fur Trappers Corp. v. United States,* 12 CIT 612, 615, 691 F.Supp. 364, 367 (1988), *aff'd,* 884 F.2d 563 (Fed.Cir.1989) (quoting *Alberta Gas Chems., Inc. v. United States,* 1 CIT 312, 315–16, 515 F.Supp. 780, 785 (1981)). "Statutory deadlines are usually directory and not mandatory when 'no restraint is affirmatively imposed on the doing of the act after the time specified and no adverse consequences are imposed for the delay.'" *Canadian Fur Trappers* at 615, 691 F.Supp. at 367 (quoting *Philipp Bros.,* 10 CIT at 82, 630 F.Supp. at 1323). In this case, *the adverse consequence* of no interested party having objected *or* requested an administrative review by the last day of the fifth anniversary month *was that Commerce would revoke the Finding,* therefore, the directive of section 353.-25(d)(4)(iii) is mandatory. Hence, the Secretary was obligated to revoke the Order and no administrative review should have been commenced.

Parenthetically, Lenzing's and Courtaulds' June 3, 1993 objection to the proposed revocation of the Finding was invalid because the

objection ensued in response to an invitation erroneously extended as the time to issue the notice had expired and Commerce was obligated to revoke the Order.

Thus, Kemira has prevailed in showing that it has a likelihood of succeeding on the merits in its action against Commerce.

### B. *Threat of Immediate Irreparable Harm*

Kemira alleges irreparable harm based on deprivation of constitutional due process rights. Specifically, plaintiff claims that participation in an administrative review would be at the loss of substantive and procedural rights under the laws of the United States. Further, plaintiff contends that it will be irreparably injured if it is required to divulge commercial information to its competitors.

Defendant does not address whether Kemira has constitutionally protected interests, but rather, argues that the statute and regulations contain safeguards for the protection of proprietary information and there is no reason to believe such information would not be adequately protected.

With respect to Kemira's concern regarding disclosure of its sensitive commercial information, the Court notes that Commerce is dependent on the submission of complete and thorough information in order to complete its fact-finding processes. Clearly, Commerce's investigatory needs must be balanced with a party's need for confidentiality. However, this balance is achieved through proprietary information safeguards. 19 U.S.C. § 1677f(b) (1988); 19 U.S.C. § 1677f(c)(1)(A) (1988 & Supp. IV 1992); 19 U.S.C. § 1677f(c)(1)(B) (1988); 19 C.F.R. § 353.34 (1993).

 Deprivation of constitutional rights constitutes irreparable harm sufficient to require immediate relief. *See, e.g., Bowman v. Township of Pennsauken,* 709 F.Supp. 1329, 1348 (D.N.J.1989) (equal protection and due process violations establish irreparable harm). The United States Court of Appeals for the Federal Circuit has recognized that,

---

clude that the requirements of paragraph (d)(1)(i) for revocation or termination are met, revoke the order or terminate the suspended investigation, and publish in the FEDERAL REGISTER the notice described in paragraph (d)(3)(vii) of this section.
19 C.F.R. § 353.25(d)(4) (1993) (emphasis added).

"[t]hose seeking constitutional protection under the due process clause must point to a 'legitimate claim of entitlement' prior to any consideration of the Government's constitutional obligations." *American Ass'n of Exporters and Importers–Textile and Apparel Group v. United States*, 751 F.2d 1239, 1250 (Fed.Cir.1985) (citing *Arnett v. Kennedy*, 416 U.S. 134, 167, 94 S.Ct. 1633, 1650–51, 40 L.Ed.2d 15 (1974). *See also, Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) (where a person has a legitimate claim of entitlement to a benefit, that person is entitled to procedural due process). Further, in order to be protected, an interest must be more than a "unilateral expectation." *Id.* 408 U.S. at 570, 92 S.Ct. at 2705. Entitlements are created by rules or understandings of law, the substance of which, the public is free to peruse and has a right to rely upon. Though Kemira does not articulate its due process argument with specificity, it is clear that 19 C.F.R. § 353.25(d)(4)(iii) secured, for Kemira, the benefit of revocation of the Order. The Court has reviewed the substance of this regulation and has found that its language clearly supports Kemira's claim of entitlement to that benefit. Nonetheless, Commerce seeks to deny Kemira this entitlement by drawing it into an administrative review.

■ It is well settled that procedural due process guarantees do not require full-blown, trial-type proceedings in all administrative determinations. *See, e.g., Mathews v. Eldridge*, 424 U.S. 319, 348, 96 S.Ct. 893, 909, 47 L.Ed.2d 18 (1976). In *Pasco Terminals, Inc. v. United States*, 83 Cust.Ct. 65, 477 F.Supp. 201 (1979), *aff'd*, 68 CCPA 8, C.A.D. 1256, 634 F.2d 610 (1980), the court found that "when administrative agencies conduct nonadjudicative fact-finding investigations, rights such as cross-examination generally do not obtain." *Pasco Terminals*, 83 Cust.Ct. at 78, 477 F.Supp. at 213 (*citing Hannah v. Larche*, 363 U.S. 420, 445–46, 80 S.Ct. 1502, 1516–17, 4 L.Ed.2d 1307 (1960)). The United States Customs Court in *Pasco* stated:

> [D]ue process does not necessarily require a trial-type hearing or an opportunity to confront and cross-examine witnesses. The fact is that the differences in the origin and function of administrative agencies preclude wholesale transplantation of the rules of procedure, trial, and review which have evolved from the history and experience of courts.

*Pasco Terminals, id.* at 78, 477 F.Supp. at 213. Nonetheless, agencies must adhere to the procedures Congress has mandated, lest actions be deemed arbitrary, capricious and not in accordance with law. *Cf. Union of Concerned Scientists v. Atomic Energy Comm'n*, 499 F.2d 1069, 1082 (D.C.Cir.1974) (an agency's failure to follow its own rules and procedures is fatal to an action). Though administrative agencies require a measure of latitude in performing their Congressionally mandated functions, judicial review of administrative determinations can only be meaningful under the due process clause of the Fifth Amendment if the reviews have been initiated in compliance with the procedures which Congress has set forth in statutes and which Commerce has implemented in its regulations. In the case at bar, Commerce's regulation 19 C.F.R. § 353.-25(d)(4)(iii) specifically sets forth that on the first day of the fifth anniversary month, in this case March 1, 1993, Commerce shall publish a notice notifying interested parties of its intention to revoke the Finding and inviting them to file any objections that they may have. Commerce failed to do this. Instead, on March 12, 1993, it published a notice inviting interested parties to request an administrative review. Commerce received no requests for a review by the last day of the fifth anniversary month. Belatedly—on June 3, 1993, Commerce published a notice of its intent to revoke the Finding. Although the domestic industry did file an objection to the revocation within thirty days of the notice's publication, no administrative review was requested. Thereafter, on March 4, 1994, one year later—in the sixth anniversary month, Commerce issued a notice offering interested parties an opportunity to request an administrative review and issued a notice of its intent to revoke the Finding and the Order. It is clear that Commerce did not comply with the procedures set forth in its own regulations and failed to implement same. In so doing, Commerce acted in an arbitrary and capricious manner and de-

prived Kemira of its constitutional due process right.

Hence, although the Court agrees with Commerce that the statute and regulations provide adequate protection for Kemira's sensitive commercial information, the Court finds that Kemira prevails on this issue on due process grounds.

### C. *Balance of the Hardship*

In balancing the hardships on the parties, there is no doubt that the scale tips decidedly in plaintiff's favor. Kemira's clear right to relief is not counterbalanced by any showing of injury or loss to Commerce, whose remedies remain intact. Upon a new petition from an interested domestic party for a new antidumping investigation, Commerce can determine whether the fiber is being sold in the United States at less than its fair value. Moreover, the International Trade Commission may determine whether the U.S. domestic fiber industry is being injured as a consequence of fiber imports. Upon a determination that fiber imports are entering the country at less than fair value and that there is injury to the domestic fiber industry, a new antidumping duty order may issue.

### D. *Service of the Public Interest*

"The public interest is served when agencies act in conformity with a statutory mandate designed to achieve goals inuring to the public benefit." *Hyundai Pipe Co. v. U.S. Int'l Trade Comm'n,* 10 CIT 695, 699–700, 650 F.Supp. 174, 177 (1986). Moreover, it would be unfair to the foreign producer to subject it to an administrative review instead of to a new investigation when the two domestic manufacturers interested in maintaining the Order, were not in the fiber industry when the Order was initially issued. In point of fact, there is no way to know whether these domestic producers are being injured by Kemira's imports.

Therefore, the public interest is served by a grant of the relief requested.

### Conclusion

Plaintiff has satisfied the requirements for injunctive relief. Accordingly, this Court grants Kemira's motion for a preliminary injunction and hereby enjoins Commerce from conducting an administrative review of viscose rayon staple fiber from Finland for 1993–94.

Because this decision also disposes of the merits of this action, a declaratory judgment will issue unless facts contradicting or explaining the facts in this decision are submitted within 10 days of the date this opinion is entered. If such information is not submitted by the parties, the Court will deem that it has all of the facts on this case and it will issue a declaratory judgment.