HILSEA INVESTMENT LTD., AND CONDOR FARMS, INC., PLAINTIFFS *v.* RONALD BROWN, SECRETARY OF COMMERCE, AND U.S. DEPARTMENT OF COMMERCE, DEFENDANTS

Court No. 94-08-00487

(Dated November 22, 1994)

*Levinson & Associates (Lizbeth R. Levinson),* for plaintiffs.

*Frank W. Hunger,* Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, United States Department of Justice *(John S. Groat);* United States Department of Commerce *(Stacy J. Ettinger),* of counsel, for defendants.

## MEMORANDUM AND ORDER

GOLDBERG, *Judge:* This matter comes before the Court on plaintiffs' motion for a preliminary injunction and defendants' motion to dismiss for either lack of jurisdiction or for failure to state a claim. The Court finds that it lacks jurisdiction to entertain this action. The Court therefore grants defendants' motion to dismiss.

## BACKGROUND

This case involves an antidumping investigation of fresh cut roses from Ecuador conducted by defendant, the United States Department of Commerce ("Commerce"). Plaintiff, Hilsea Investment Ltd. ("Hilsea"), exports fresh cut roses from Ecuador to the United States. Co-plaintiff, Condor Farms, Inc., is the domestic importer of the roses.

On February 14, 1994, the U.S. Floral Trade Council filed petitions alleging that imports of fresh cut roses from Ecuador and Colombia at less than fair value cause or threaten to cause material injury to an American industry. On March 14, 1994, Commerce initiated antidumping investigations of fresh cut roses from Colombia and from Ecuador. On April 13, 1994, Hilsea filed a request for exclusion from any antidumping order that might result from the investigation of Ecuadorian roses.

On April 26, 1994, Commerce issued a memorandum in connection with its antidumping investigations of Colombian and Ecuadorian roses. In the memorandum, Commerce discussed whether to investigate: (1) exporters requesting voluntary respondent status; and (2) exporters requesting exclusion from potential antidumping orders. Commerce recognized that in the past it had examined voluntary respondents to the extent practicable, as required by 19 C.F.R. § 353.14(c). Commerce determined, however, that it could not practicably examine voluntary respondents and exclusion requests in its investigations of Colombian and Ecuadorian roses.

Commerce proceeded to select mandatory respondents for its antidumping investigations of Colombian and Ecuadorian roses. Commerce determined that it had the administrative resources to investigate a total of 20 companies in the two investigations. Commerce attempted to distribute its limited resources equitably between the investigations, with a goal of examining 40% of the roses imported from each country.[1] Commerce found that it could achieve its goal by investigating 16 Colombian exporters and 3 Ecuadorian exporters. Commerce used its remaining resources to investigate one additional Ecuadorian exporter. In May 1994, Commerce issued mandatory pricing and cost of production questionnaires regarding calendar year 1993 to the four Ecuadorian rose exporters which it had selected. Hilsea was not among the selected respondents.

---

[1] Commerce determined that it did not have the resources to investigate 60% of the imports of the subject merchandise from each country, as is its common practice.

On May 9, 1994, Hilsea sent a letter to Commerce, requesting that Commerce reconsider its decision to deny all requests for exclusion and voluntary respondent status. Hilsea claimed that Commerce had disproportionately allocated resources to the Colombian investigation.

On May 26, 1994, Hilsea attempted to file a voluntary response to one section of the questionnaire. Commerce rejected Hilsea's response and sent Hilsea a copy of the April 26, 1994 memorandum discussing why it could not investigate voluntary respondents. Commerce further informed Hilsea that it would return any future voluntary responses that Hilsea attempted to submit.

On June 6, 1994, Hilsea sent Commerce a letter protesting Commerce's decision not to allow it to submit a questionnaire response in the antidumping investigation. Commerce again responded by sending Hilsea a copy of its April 26, 1994 memorandum.

Plaintiffs then filed suit in this court, asking the Court to compel Commerce either to accept Hilsea's questionnaire responses or to exclude Hilsea from the scope of any potential antidumping order. Defendants now request that the Court dismiss plaintiffs' action either for lack of jurisdiction or for failure to state a claim upon which relief can be granted.

## DISCUSSION

Because defendants have challenged the jurisdiction of the Court, plaintiffs bear the burden of demonstrating that jurisdiction exists. *Lowa, Ltd. v. United States,* 5 CIT 81, 83, 561 F. Supp. 441, 443 (1983) (citation omitted), *aff'd,* 2 Fed. Cir. (T) 27, 724 F.2d 121 (1984). Plaintiffs assert that the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(i).

The jurisdiction of this Court is set forth at 28 U.S.C. § 1581 (1988). Subsections (a) through (h) of this statute describe particular kinds of actions over which this Court has jurisdiction. Subsection (i) provides the Court with residual jurisdiction over importation actions for which Congress expected judicial review, but which are too varied for description. *Techsnabexport, Ltd. v. United States,* 16 CIT 420, 424, 795 F. Supp. 428, 433 (1992) (citation omitted). Subsection (i) comes into play only when the remedies provided by subsections (a) through (h) are unavailable or prove manifestly inadequate. *Miller & Co. v. United States,* 5 Fed. Cir. (T) 122, 124, 824 F.2d 961, 963 (1987) (citations omitted).

In certain cases, subsection (i) authorizes judicial review during the course of an investigation by Commerce. For example, if a party challenges the legality of the initiation of an administrative review, jurisdiction may exist during the review pursuant to subsection (i). In such a case, a party may seek to stop the allegedly unlawful review which will cost it considerable time, effort, and money. *Asociacion Colombiana de Exportadores de Flores v. United States,* 13 CIT 584, 586, 717 F. Supp. 847, 850 (1989), *aff'd,* 8 Fed. Cir. (T) 126, 903 F.2d 1555 (1990). It would be futile for the party to try to stop the administrative review from tak-

ing place after its completion. Therefore, judicial review after Commerce's final determination pursuant to 28 U.S.C. § 1581(c) is manifestly inadequate, and jurisdiction exists during the pendency of the administrative review pursuant to subsection (i). *Id.* at 588, 717 F. Supp. at 581; *see also Kemira Fibres Oy v. United States,* 18 CIT 687, 858 F. Supp. 229 (1994); *Carnation Enters. Pvt., Ltd. v. United States Dep't of Commerce,* 13 CIT 604, 719 F. Supp. 1084 (1989).

In most cases, however, subsection (i) does not provide the Court with jurisdiction to review Commerce's actions during the pendency of an investigation. *MacMillan Bloedel Ltd. v. United States,* 16 CIT 331, 332 (1992) (citations omitted). Parties must usually wait for a final determination by Commerce, and then seek judicial review pursuant to subsection (c). At that time, the Court can review interlocutory decisions subsumed in the final determination, including those relating to methodology or procedure. *Asociacion Colombiana de Exnortadores de Flores,* 13 CIT at 587, 717 F. Supp. at 850 (citation omitted). Piecemeal review of Commerce's interlocutory decisions prior to a final determination is discouraged because it is generally inefficient. *PPG Indus., Inc. v. United States,* 2 CIT 110, 112, 525 F. Supp. 883, 885 (1981). Furthermore, subsection (c) review may prove unnecessary in the event that the final determination does not adversely affect the prematurely complaining party. *Id.*

In past cases, this Court has recognized that jurisdiction usually does not exist to review interlocutory procedural decisions by Commerce. For example, this Court has noted that Congress did not intend for it to review Commerce's decision to exclude an exporter from an antidumping investigation until review of Commerce's final determination. *Carnation Enternrises,* 13 CIT at 611, 719 F. Supp. at 1090 (1989) (citing H.R. Rep. No. 1235, 96th Cong., 2d Sess. 48, *reprinted in* 1980 U.S.C.C.A.N. 3729, 3760). Similarly, this Court has held that it may not review Commerce's decision to deny an exporter's request for exclusion from a countervailing duty order until it reviews Commerce's final determination. *MacMillan Bloedel Ltd.,* 16 CIT at 332–33.

In spite of such precedent, plaintiffs in this case essentially seek to have the Court review Commerce's decisions: (1) to exclude plaintiffs from serving as respondents in an antidumping investigation; and (2) to deny plaintiffs' request for exclusion from an antidumping order. Plaintiffs admit that such Interlocutory decisions "may be subsumed in a final determination by Commerce * * * and thus be subject to post-investigation judicial review under 28 U.S.C. § 1581(c)." *Plaintiffs' Response to Defendants' Motion to Dismiss ("Plaintiffs' Response")* at 2. Plaintiffs claim, however, that the delay inherent in seeking judicial review under subsection (c) makes relief under that subsection manifestly inadequate in this case. *Id.*

Plaintiffs' arguments that § 1581(c) relief will come too late does not warrant much discussion. *See MacMillan Bloedel Ltd.,* 16 CIT at 333. As noted, plaintiffs will have a meaningful opportunity to seek judicial

review of Commerce's final determination, and the interlocutory procedural decisions subsumed therein, pursuant to subsection (c). Post-investigation review is not manifestly inadequate merely because plaintiffs will have to wait for Commerce to issue a final determination. It does not appear that Commerce will take an extraordinary or unjustified amount of time to complete its investigations in this case.[2] Nor is post-investigation review manifestly inadequate because plaintiff must pay deposits until review occurs; indeed, "paying deposits pending Court review is an ordinary consequence of the statutory scheme." *Id*. Because plaintiffs will have an adequate opportunity to seek relief pursuant to subsection (c), jurisdiction does not exist pursuant to subsection (i) in this case. Consequently, the Court will refrain from reviewing the interlocutory decisions of which plaintiffs complain at this time. Wherefore, it is hereby

ORDERED that plaintiffs' motion for a preliminary injunction is DENIED; and it is further

ORDERED that defendants' motion to dismiss for lack of jurisdiction is GRANTED. Judgment will be entered accordingly.

---

[2] In this case, coiaiaerce has 9iven notice that it will issue its final determination not later than January 26, 1995. 59 Fed. Reg. 50,725 (Oct. 5, 1994).